[No. 2479-1.   Division One.   November 25, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. JAY W. SHORT, JR., *Appellant*.

*Kafer, Wilson, Luchini & Good, Randall L. St. Mary* and *Robert C. Alexander,* for appellant (appointed counsel for appeal).

*Robert E. Schillberg, Prosecuting Attorney,* and *Donald J. Hale* and *Stephen Palmberg, Deputies,* for respondent.

FARRIS, J.—Jay W. Short appeals from the entry of judgment upon his plea of guilty to two counts of larceny by possession. He was sentenced to 15 years in prison. The appeal questions (1) whether the trial court erred in failing to enter findings of fact and conclusions of law in support of its determination that the plea of guilty was knowingly and voluntarily made, and (2) whether Short was denied a fair sentence hearing.

Short was arrested in March of 1973 and charged with five counts of larceny by possession after items which were determined to be stolen were found at his home. His bond was fixed at $100,000 and later reduced to $50,000. He was unable to post bail and sought a writ of habeas corpus from the Supreme Court alleging excessive bail. At the time of his arrest Short was an established businessman, owned a home and a farm, had a family and had been a respected

citizen of the area for several years. The Supreme Court denied the writ. On June 18, 1973, 2 days before the trial was scheduled to begin, upon advice of counsel, he pleaded guilty to two counts in return for dismissal of the remaining three. Following entry of the guilty plea, his bail was reduced to $23,500. He secured his release and was immediately examined by a psychiatrist who placed him in a hospital.

On July 26, 1973, the day set for sentencing, Short moved to withdraw his guilty plea, alleging that it was not made knowingly or voluntarily. After an evidentiary hearing which included psychiatric testimony on behalf of Short's contention, the motion was denied. A law enforcement official then testified concerning the scope of Short's criminal involvement and Short presented six character witnesses who refuted charges made by the officer. Short was sentenced to a maximum term of 15 years on each count, the terms to run concurrently.

■ Short recognizes that whether his plea was knowingly and voluntarily made was a question of fact for the trial court which need only be supported by substantial evidence to be upheld on review. He argues, however, that the failure of the trial court to enter formal findings of fact and conclusions of law on the question of whether his plea was knowingly and voluntarily made precludes proper appellate review, thus constituting a denial of due process. One can conceive of a factual situation in which Short's contention would at least merit some consideration.[1] However, where, as here, the basis for the trial court's ruling is

[1] See United States v. Battle, 447 F.2d 950 (5th Cir. 1971) (insufficient record to review denial of motion to mitigate sentence/withdraw guilty plea); State v. Roberts, 18 N.C. App. 388, 197 S.E.2d 54 (1973) (insufficient record to determine factual basis for denial of motion to dismiss for deprivation of right to speedy trial); State v. Madrid, 20 Ariz. App. 51, 510 P.2d 50 (1973) (due process violated because appeal foreclosed where the transcript of a parole revocation hearing is destroyed by no fault of defendant who appeals from alleged errors committed at hearing); People v. Hicks, 40 App. Div. 2d 836, 337 N.Y.S.2d 346 (1972) (insufficient record to determine basis of denial of motion to suppress evidence).

128

apparent from the record, failure to enter formal findings of fact and conclusions of law does not foreclose appellate review and thus does not constitute reversible error. *Papalia v. United States*, 333 F.2d 620 (2d Cir. 1964); *People v. Lombardi*, 18 App. Div. 2d 177, 239 N.Y.S.2d 161, *aff'd*, 13 N.Y.2d 1014, 195 N.E.2d 306, 245 N.Y.S.2d 595 (1963).

Here we have a verbatim transcript of the evidentiary hearing on Short's motion to withdraw his guilty plea and the court's denial of that motion. The record reflects that the court based its denial on (1) the court's personal observation of Short during its lengthy inquiry, before accepting the plea, into Short's understanding of the effect of the plea and the circumstances surrounding his decision to enter it, (2) the transcript of the proceedings before the inquiry judge which took place 7 days after the plea was entered and 4 days after Short was examined by Dr. Hood, and (3) the testimony of Dr. Hood.

There is an adequate record for review; we find sufficient evidence to support the trial court's holding that the plea was knowingly and voluntarily made. Short's allegation that he entered the guilty plea because he was claustrophobic, could get a bail reduction no other way and was thereby subtly coerced into the plea finds no support in the record. Nothing therein even suggests that the State knew or had any reason to suspect that Short was claustrophobic, if he was, and further, there is nothing in the record to suggest that Short knew or had reason to believe that his bail would be reduced if he entered a plea of guilty. He was at all times represented by counsel. The record affirmatively shows that the State refused to make any promise of a recommendation for leniency in exchange for the plea. The bargain was initiated by Short's counsel just prior to trial. Whether there was evidence from which a jury might find Short guilty of all five counts instead of the two to which he pleaded guilty was a proper consideration of Short and his counsel, and we find nothing in the record to suggest that it was not the only consideration. We do not

ignore the statement of the State's attorney made prior to the entry of the guilty plea:

[W]e are not going to talk about bail until this man has either been tried or he has plead [sic] guilty.

The trial court considered Short's allegation that a proper inference from the statement is "bail will be reduced in exchange for a plea of guilty."[2] Even if we agreed with Short's interpretation of the above quoted statement, and we do not, the determination by the trial court of a factual issue will be upheld on appeal if it is supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

Short next argues that the trial court erred in precluding opinion testimony from the psychiatrist who examined him following his release on bail before pronouncing sentence. The record reflects, however, that although his counsel was unsuccessful in several attempts to present the opinion testimony of Dr. Hood,[3] he eventually succeeded in getting the opinion before the court.[4] The trial court, in fact, refers to Dr. Hood's testimony in denying the motion.[5] We find no abuse of discretion.

Short next challenges the standard used by the court in deciding the motion to withdraw the plea. The ruling on the motion to withdraw the guilty plea was made July 26, 1973; CrR 4.2(f)[6] became effective on July 1, 1973. The trial court and counsel for Short and the State erroneously presumed that the statutory change did not alter

---

[2]The record contains allegations that Short was prepared to leave the jurisdiction of the court and the prosecutor explains that as the basis for the statement.

[3]Statement of Facts at 6, 8-9, 11, 21.

[4]*See* Appendix, part 1.

[5]*See* Appendix, part 2. In referring to the fact that the appellant's alleged condition can "come and go," the court, in passing sentence, implicitly considered the very opinion that the appellant here contends was improperly excluded. See italicized portion of Appendix, part 1.

[6]CrR 4.2(f): "*Withdrawal of Plea.* The court shall allow a defendant to withdraw his plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice."

the standard in use prior to its enactment.[7] *State v. Taylor,* 83 Wn.2d 594, 521 P.2d 699 (1974) holds that CrR 4.2(f) did in fact. supersede RCW 10.40.175. While the record suggests that the trial court would have denied Short's motion under either standard, we need not reach the question. The objection to the standard used, made for the first time on appeal, is not timely. *Seattle v. Harclaon,* 56 Wn.2d 596, 354 P.2d 928 (1960). The standard used is the law of the case for purposes of the appeal.

Finally, error is assigned to the failure of the trial court to permit defense counsel to effectively inquire into the objective basis of allegations contained in the presentence report during cross-examination of Detective Falk at the sentencing hearing. Detective Falk authored a letter which asserted that Short was a major "fence" in the Seattle area. Some allegations in the letter were treated as factual and incorporated into the presentence report. At the hearing, Short was permitted to cross-examine Falk concerning the letter. However, Falk's refusal to answer questions concerning matters which he claimed were under investigation at that time was upheld. Short concludes he was thereby denied his constitutional right to effectively cross-examine Falk and that matters considered by the court in his sentencing were improper and a denial of due process. He asserts that he was deprived of the right to refute the charge that he was a major fence because he was uninformed as to the factual basis of the allegation and the court's ruling denied him the opportunity to remedy that through effective cross-examination. The statement of the trial judge at the time of sentencing indicates that he considered Falk's allegations in rejecting the defense request for probation. Short received a 15-year sentence.

A presentence report frequently includes hearsay and rarely (if ever) meets the requirements of evidence. It is merely one tool to assist the court in arriving at its

---

[7]RCW 10.40.175 and *State v. Harris,* 57 Wn.2d 383, 385, 357 P.2d 719 (1960).

sentence recommendation to the parole board. It never properly comes into consideration until after conviction.

The absence of the opportunity to cross-examine the named and frequently unnamed persons whose statements are included in the report does not prohibit its use by the sentencing judge. *Williams v. New York,* 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949); *State v. Buntain,* 11 Wn. App. 101, 521 P.2d 752 (1974). Nor is it improper for the sentencing judge to consider unsworn statements of a prosecuting witness at the sentencing hearing. *State v. Williams,* 51 Wn.2d 182, 316 P.2d 913 (1957). The procedural requirements of due process are satisfied if the convicted felon is apprised of the facts and charges in the report, *State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 416 P.2d 670 (1966), and is given the opportunity to rebut allegations therein, if those allegations are considered by the sentencing judge. In *United States v. Espinoza,* 481 F.2d 553, 556 (5th Cir. 1973), the court held:

[I]t has . . . been widely recognized that where a sentencing judge *explicitly relies* on certain information in assessing a sentence, fundamental fairness requires that a defendant be given at least some opportunity to rebut that information.

*Accord, State ex rel. Woodhouse v. Dore, supra; Collins v. Buchkoe,* 493 F.2d 343 (6th Cir. 1974); *United States v. Battaglia,* 478 F.2d 854 (5th Cir. 1972); *United States v. Carden,* 428 F.2d 1116 (8th Cir. 1970).

Our review of the record indicates that Short was afforded an opportunity to rebut the allegation that he was a fence. In addition to presenting testimony of six favorable witnesses, Short was given the opportunity to attack the State's allegation through limited cross-examination of Detective Falk. Short alleges, however, that his right to rebut was a hollow right since he did not know the factual evidence which supported the allegation; he was therefore unable to rebut those facts and instead was forced to disprove a mere allegation by trying to "prove a negative."

In *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971),

the Ninth Circuit was faced with a similar claim. The court acknowledged that though *Williams v. New York, supra,* forecloses a due process attack on the use of presentence reports containing information supplied by persons not subject to cross-examination, the decision did not totally exempt sentencing from due process scrutiny. *See Williams v. New York,* 337 U.S. 241, 252 n.18, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949); *Townsend v. Burke,* 334 U.S. 736, 92 L. Ed. 1690, 68 S. Ct. 1252 (1948). *Weston* held that due process requires that allegations which are considered by a judge in passing sentence have some factual basis in the record. *Cf. State v. Buntain, supra,* and cases cited therein.

We find that the requirement of a factual basis for the allegation that Short was a fence is satisfied by the record before us. Short admitted his guilt to two counts of larceny by possession and, in addition, he was in possession of a substantial amount of stolen property at the time of his arrest. Further, Falk gave as one basis of his allegation the information that a Mr. Steever, who had testified at Short's preliminary hearing, corroborated Falk's assertion that Short was a major fence with information that itself had been corroborated by Falk's investigation. Statement of Facts at 83-85. While none of this was sufficient to *prove* the allegation, when taken together it provided a *basis* for the allegation sufficient to meet the due process requirement that the convicted felon be given an opportunity to rebut.

Affirmed.

JAMES and WILLIAMS, JJ., concur.

Petition for rehearing denied December 31, 1974.

Review denied by Supreme Court February 10, 1975.

### APPENDIX
#### Part 1

(By Mr. Griffin) [attorney for appellant]: Doctor, can you form an opinion based on reasonable medical probability with respect to this set of facts: Mr. Short for a period had been incarcerated in the Snohomish County Jail for approximately six weeks. During this period of time he became quite agitated, emotional, crying; began

suffering loss of memory, and forgetfulness, and came to such a state that it became difficult for him to relate to his counsel the very circumstances surrounding the charges, at times he would be totally unable to communicate and relate, and other times would be quite lucid and understanding of what was being discussed. Then on the following date he would be unable to relate or refer back to the previous conversation, and in such event was to the point where he was rapidly deteriorating on his understanding of it. Then when they produced charges on the 18th of June, 1973, can you give an opinion as to whether or not he would have been able to form an understanding of the full nature and effect of those charges and to knowingly enter a plea to those charges?

A. The answer is—yes.

MR. HALE [prosecuting attorney]: Unless there is some indication of what date he is talking about—

MR. GRIFFIN: Commencing from the first part of May to the 18th of June, 1973?

WITNESS [Dr. Hood]: I have an opinion—yes.

THE COURT: I am going to let him express it. Go ahead—what's your opinion?

A. In my opinion he apparently was emotionally disturbed and upset, from the history given. I have no objective evidence. I didn't see him during that period, as I have stated. It is purely subjective. In my opinion he was having the same emotional, similar emotional upsets while he was incarcerated. During that period of time that he described to me, he was crying, shaking, unable to sleep, and at times confused and loss of memory.

. . .

WITNESS: I think there were times when he was so confused with loss of memory he did not know what he was doing and would not be responsible.

Q. (By Mr. Griffin) Do you think that would be true on the 18th of June?

A. I cannot definitely state on the 18th of June. I did not see him: This type of thing is an *off and on* position. In my opinion, he was definitely disturbed during the time he was incarcerated. Again, with this type of thing, it was *off and on.* He was on tranquilizers. I just can't make a statement like that.

Q. Is it a fair statement to really know on that date you would have had to see him?

A. Right.

(Italics ours.) Statement of Facts at 25-27.

### Part 2

In passing sentence, the court said:

Dr. Hood said today that this can *come and go,* can build up over a long period of time. I can't say that this man didn't know what he was saying on the 18th day of June. I cannot say he doesn't know what he is doing here, saying here today. On the basis of my interview with him, I'd say he does understand and knows what is going on here today in this proceeding.

(Italics ours.) Statement of Facts at 62.