[No. 28960-8-I.    Division One.    November 30, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. S.S., *Appellant*.

*Andrew P. Zinner* of *Washington Appellate Defender Association,* for appellant.

*Michael E. Rickert, Prosecuting Attorney,* and *Thomas E. Seguine, Deputy,* for respondent.

KENNEDY, J. — S.S.,[1] a juvenile, challenges his manifest injustice disposition, claiming that the trial court erroneously admitted and considered the written report of a social worker in violation of appellant's right to cross-examine the preparer of the report. Specifically, appellant contends that his right to cross-examine witnesses embodied in RCW 13.40.150(1) must be measured by constitutional confrontation clause standards.

## I

On July 5, 1991, S.S. pleaded guilty to taking a motor vehicle without permission (two counts) and obstructing a public servant (one count). In his guilty plea, appellant, a middle offender, acknowledged that the prosecutor would seek a finding of manifest injustice and a disposition higher than the standard range of 16 to 24 weeks of confinement.

The disposition hearing was held on July 17, 1991. The prosecutor called the following witnesses: Cameron Oliver, a caseworker for Northwest Youth Services in Mount Vernon; Christopher Tobey, an intervention specialist for Skagit County who had been employed at Secret Harbor School while appellant was in residential treatment there; Richard Tilkin, who had served as appellant's probation and parole counselor in Snohomish County; R.S., appellant's mother; and Susan Hunt, appellant's probation officer in Skagit County. Each of these witnesses testified to his or her respective knowledge of appellant's extensive history of criminal

---

[1]Because the record for this appeal was sealed by the juvenile court, we refer to the appellant by his initials.

conduct, his problems with alcohol and drug abuse, his problems with impulse control and family and interpersonal relationships and his inability to benefit significantly from numerous community based treatment programs which had been offered in the past. Tobey, Tilkin and Hunt each recommended 104 weeks of confinement as essentially the appellant's last hope of rehabilitation before reaching the age of majority and becoming subject to the adult criminal justice system. Each of these witnesses testified that he or she believed that 16 to 24 weeks of confinement would not be a sufficient time in which to provide the kind and degree of treatment called for in this case. Appellant's mother testified that she, too, was in favor of up to 104 weeks of confinement if this would provide S.S. with treatment for his emotional, drug and alcohol problems.

  Absent from the hearing was Ted St. Hilaire, appellant's social worker at Smokey Point Division of Children and Family Services (DCFS) in Snohomish County. St. Hilaire submitted a letter, which was provided to appellant prior to the hearing, in which he joined in the recommendation of Ms. Hunt for 104 weeks of confinement and in which he stated that DCFS had no community based programs available which would be effective for the appellant.[2]

Appellant objected to the admittance of St. Hilaire's letter into evidence, arguing that he was entitled to cross-examine St. Hilaire. The prosecutor then elicited testimony from Ms. Hunt as to the reason for St. Hilaire's absence. Ms. Hunt testified that, when she contacted St. Hilaire to notify him of the date of the disposition hearing, St. Hilaire advised her that he and his wife had made vacation plans which they could not reschedule, due in large part to Ms. St. Hilaire's work schedule. The court admitted St. Hilaire's

---

[2]Although we question the materiality and relevance of this treatment program information, in view of the appellant's standard range and in view of the fact that neither side was requesting community based treatment, we will accept the parties' position that St. Hilaire's letter contained material and relevant information. We do so in order to address an unsettled legal issue of substantial public interest.

letter into evidence, over appellant's renewed objection, on the basis that St. Hilaire was not "reasonably available" for cross examination, pursuant to RCW 13.40.150(1).

At the conclusion of the hearing the court imposed a manifest injustice disposition of 80 weeks. This appeal followed.

## II

RCW 13.40.150(1) provides that:

> In disposition hearings all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though such evidence may not be admissible in a hearing on the information. The youth . . . *shall be afforded an opportunity to examine and controvert written reports so received and to cross-examine individuals making reports when such individuals are reasonably available,* but sources of confidential information need not be disclosed.

(Italics ours.) Appellant contends that he has a constitutional right to confront witnesses at a manifest injustice hearing under the sixth amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution. Appellant further contends that these constitutional rights were violated when St. Hilaire's letter was admitted and considered after the State failed to exercise all available means to compel St. Hilaire's presence at the trial.[3]

In *State v. Whittington*, 27 Wn. App. 422, 428-29, 618 P.2d 121 (1980), a panel of this court held that a disposition hearing at which a finding of manifest injustice is sought is subject to the same standard as an adjudicatory proceeding, insofar as the constitutional right to confront and cross-examine witnesses is concerned. However, in *State v. Beard*, 39 Wn. App. 601, 607-08, 694 P.2d 692, *review denied*, 103 Wn.2d 1032 (1985), another panel of this court questioned the underlying premise of *Whittington*. Stopping short of entirely disavowing *Whittington*, the *Beard* court nevertheless suggested that *Whittington* should be narrowly construed. *Beard*, 39 Wn. App. at 608 n.4.

---

[3]It is conceded by the State that no effort was made to subpoena St. Hilaire.

In *State v. Escoto*, 108 Wn.2d 1, 11 n.2, 735 P.2d 1310 (1987) (Durham, J., concurring), the author of *Whittington* stated:

> I believe that *Whittington* should be limited to its facts and that *[Beard]* suggests a more reasonable approach to analyzing constitutional issues surrounding manifest injustice proceedings under the Juvenile Justice Act of 1977.

In *State v. S.P.*, 110 Wn.2d 886, 889 n.1, 756 P.2d 1315 (1988), although not addressing whether there is a *constitutional* right to confront witnesses at a juvenile disposition hearing — the juvenile in *S.P.* having been denied his *statutory* right to confront and cross-examine a witness in the absence of any finding by the court that the witness was not reasonably available — the Supreme Court noted that it had "questioned *Whittington*'s approach to analyzing the constitutional right to confront at a manifest injustice proceeding" (citing *Escoto*, 108 Wn.2d at 11 n.2 (Durham, J., concurring)).

To the extent that *Whittington* may have any continuing vitality, in light of *Beard, Escoto* and *S.P.*, we decline to adopt its holding or reasoning. Instead, we start our analysis of the constitutional rights of a juvenile in a manifest injustice disposition proceeding with the observation of the United States Supreme Court in *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967), that there is a valid distinction between the adjudicatory stage of a juvenile proceeding and the postadjudication disposition stage. *In re Gault*, 387 U.S. at 31 n.48, 57 n.98. The Washington appellate courts repeatedly have recognized the rehabilitative purposes underlying the juvenile justice system. *See, e.g., State v. Rice*, 98 Wn.2d 384, 392, 655 P.2d 1145 (1982); *In re Smiley*, 96 Wn.2d 950, 953, 640 P.2d 7 (1982); *State v. Beard*, 39 Wn. App. at 606; *State v. Escoto*, 108 Wn.2d at 9-10 (Durham, J., concurring). The rehabilitative purpose of juvenile dispositions provides a compelling reason for permitting a sentencing court to consider such information as may make "a substantial contribution to the court's understanding of the child's need and capacity for rehabilitation."

*Escoto*, 108 Wn.2d at 10 (Durham, J., concurring). Such information is likely to be found in written reports from professionals who have worked with the juvenile in the past but who, for one reason or another, are unable to be present at the disposition hearing.

ER 1101(c)(3) specifically exempts juvenile disposition hearings from the Rules of Evidence, thus allowing the routine use of hearsay evidence at juvenile disposition hearings. Although RCW 13.40.150(1) provides a statutory exception to this evidentiary rule, in cases where the preparer of a written report is "reasonably available" for cross examination, we do not deem this statutory exception to be a codification of the confrontation clauses of the federal and state constitutions. Rather, RCW 13.40.150(1) is intended to codify fundamental notions of due process in juvenile dispositions. *See* RCW 13.40.010(2)(e) (a purpose of the chapter is to "[p]rovide due process for juveniles alleged to have committed an offense").

Certainly, there are due process implications at any time that the State seeks a manifest injustice disposition in excess of the standard range. In addition to its rehabilitative purposes, the Juvenile Justice Act of 1977 also has the stated dual purpose of holding juvenile offenders accountable for their offenses. RCW 13.40.010(2); *Escoto*, 108 Wn.2d at 10 (Durham, J., concurring). In its effort to provide juvenile offenders with every realistic opportunity for rehabilitation, the courts may not ignore the fact that involuntary confinement of a child serves a punitive as well as a treatment function. Accordingly, juvenile disposition proceedings may not violate fundamental notions of due process based on a "misguided belief that such a denial of constitutional protection is for [the juvenile's] own good." *Escoto*, 108 Wn.2d at 14 (Dore, J., dissenting).

We have previously held, in the context of a pre-SRA adult sentencing hearing, that due process is satisfied so long as a defendant has an opportunity to rebut evidence presented at the time of sentencing, and so long as there is some factual basis in the record to corroborate information

supplied by persons who are not subject to cross examination. *See State v. Short*, 12 Wn. App. 125, 132, 528 P.2d 480 (1974), *review denied*, 85 Wn.2d 1002 (1975). Similarly, in *United States v. Fatico*, 579 F.2d 707 (2d Cir. 1978), *aff'd*, 603 F.2d 1053 (1979), *cert. denied*, 444 U.S. 1073, 62 L. Ed. 2d 755, 100 S. Ct. 1018 (1980), a case involving hearsay statements by an anonymous witness in the federal witness protection program, the court held that neither due process nor the Sixth Amendment confrontation clause is violated when a sentencing court relies upon hearsay evidence (1) if the defendant does not dispute the truth of the statement sought to be introduced; or (2) where the defendant *does* dispute the truth of the statement, if the government produces additional evidence from which the court can determine the reliability of the hearsay statement. *Fatico*, 579 F.2d at 713-14.

Both in *Short* and in *Fatico* it is made clear that the amount and degree of corroboration which due process requires is not that which would be necessary to prove the truth of the hearsay statement beyond a reasonable doubt, but rather that which is necessary to provide a sufficient basis for the allegation to enable the defendant to rebut it, *Short*, 12 Wn. App. at 132; or that which is necessary to enable the court to determine that the hearsay statement is reliable, *Fatico*, 579 F.2d at 713; 709 nn.3, 4.

In *Fatico* the court also stated:

> While it is not clear whether, or to what extent, the Confrontation Clause of the Sixth Amendment is implicated at sentencing, . . . or to what extent that Clause overlaps with the hearsay rule and Due Process guarantees when statements of out-of-court declarants cannot be refuted by cross-examination, for present purposes it is unnecessary to differentiate between the requirements of the Due Process Clause . . . and the Confrontation Clause . . . .. Both constitutional safeguards, as applied in this context, are directed at ensuring the fairness of criminal proceedings by defining the situations in which confrontation by cross-examination must be afforded a defendant. And for the same reasons which counsel rejection of a due process attack, we conclude that admission of an unidentified informant's corroborated declarations in a sentencing proceed-

ing where there is good cause for not disclosing his identity is not barred by the Confrontation Clause.

(Footnotes and citations omitted.) *Fatico*, 579 F.2d at 713-14.

We believe that *Short* and *Fatico* provide the appropriate framework for determining, on a case-by-case basis, whether it is necessary to differentiate between the requirements of the due process and confrontation clauses of our federal and state constitutions for purposes of a manifest injustice disposition hearing. Both constitutional safeguards are directed at ensuring the fundamental fairness of a juvenile disposition proceeding. We can conceive of sentencing situations in which fundamental fairness likely would demand direct confrontation by cross examination of most if not all material and relevant assertions of disputed fact, for example, a death penalty hearing.[4] We are not faced with such a situation here. In this case, fundamental due process was provided. The truth of the hearsay statement that DCFS could offer no viable community based programs was not denied. To the extent that St. Hilaire's joinder in the recommendation of 104 weeks of confinement added weight to the identical recommendation by each of the other professionals, the defendant was given an opportunity to rebut the statement by refuting such other recommendations. That the court imposed only 80 weeks of confinement certainly indicates that the appellant was successful in his effort to rebut the recommendation.

We hold that the confrontation clause did not bar the admittance of the letter into evidence. The court was entitled to consider the letter, together with all the other evidence presented, in determining whether to make a finding of manifest injustice and in determining the length of any exceptional disposition it might impose.

Turning now to the statute, RCW 13.40.150(1) provides that the juvenile shall be entitled to examine and controvert

---

[4]*See Gardner v. Florida*, 430 U.S. 349, 356, 359-60, 51 L. Ed. 2d 393, 97 S. Ct. 1197 (1977) (plurality).

written reports containing material and relevant evidence and to cross-examine individuals making such reports when such individuals are "reasonably available". At the *adjudicatory* stage of a juvenile proceeding the state and federal confrontation clauses require the prosecution to use "all available means" to compel a witness's presence at trial. *See State v. Hobson*, 61 Wn. App. 330, 336, 810 P.2d 70, *review denied*, 117 Wn.2d 1029 (1991). Other cases have stated that the State must prove it made a "good faith effort" to obtain the witness's presence at trial. *See, e.g., State v. Rivera*, 51 Wn. App. 556, 559, 754 P.2d 701 (1988). In *State v. Sanchez*, 42 Wn. App. 225, 711 P.2d 1029 (1985), *review denied*, 105 Wn.2d 1008 (1986), the court held that it was error to admit a videotaped deposition at the trial, in that the State failed to show that it had tried to subpoena the vacationing witness or otherwise use reasonable means to procure her attendance. Appellant argues that *Sanchez* controls here.

We see no reason to apply this constitutional, adjudicatory stage standard to the term "reasonably available" as used in RCW 13.40.150(1), in a case such as this one, where there is no constitutional bar to the admittance of a written report. Such would be a needless waste of limited state resources and a potential hardship on many witnesses. We are acutely aware that, in order to afford vacation trips, average citizens must often purchase nonrefundable airline tickets which cannot be used except on the dates their flights are scheduled. We hold that a witness who has prepared a written report is not "reasonably available" for cross examination, as that term is used in RCW 13.40.150(1), if that witness has, before becoming aware of the date of the hearing, scheduled a vacation which cannot easily and conveniently be rescheduled, and which conflicts with the date of the disposition hearing. The written report will be admissible, whether or not the State seeks a finding of manifest injustice, so long as the juvenile has an opportunity to refute the information in the report and so long as there is suffi-

cient other evidence to corroborate any relevant and material factual allegations in the report which the juvenile may dispute.

Here, there is substantial evidence in the record to support the trial court's finding that St. Hilaire was not reasonably available. The State was not required, either on constitutional or statutory grounds, to subpoena St. Hilaire or otherwise to attempt to obtain his presence as a condition of offering the report.

### III

Appellant next contends that the trial court erred in failing to grant his motion for a continuance and to require an evaluation of whether appellant suffers from fetal alcohol effect (FAE). Appellant poses this issue in terms of a defendant's constitutional right to the effective assistance of counsel, arguing that he was entitled to an expert opinion, at state expense, in order to establish or attempt to establish a defense, specifically a mitigating factor.

During the course of his cross examination the witness Christopher Tobey testified that the

> University of Washington has a program, they are researching . . . Fetal Alcohol Effect. I do not know the particulars of the program, I'm just aware of its operation, in terms of the assessment.

During the course of her cross examination, R.S., appellant's mother, stated that the

> University of Washington is doing a real good job on researching this. They're the only ones in the country, I believe, who are doing so, and I feel that [S.S.] — a lot of his problems have to do with the Fetal Alcohol Effect . . ..
> . . . And so I strongly recommend that he be checked out by UW's FAE department. I think it's real important. I've asked for that for several years now, from everybody that we've come in contact with, and it's never happened.

At the close of the State's presentation, the defense moved for a continuance and requested the court to order that S.S. be evaluated at the University of Washington to determine

whether he suffers from FAE. Defense counsel argued that, if S.S. suffers from FAE, this could be a mitigating factor.[5] The court denied the motion, indicating that even if FAE exists and even if S.S. has it, "I do not feel that it would be weighty enough to affect the disposition of this matter."

■ Although we agree with the appellant that the trial court's stated reason for denying the motion was untenable, we affirm nevertheless, in that the record provides a tenable basis for denying the motion. "A trial court's correct ruling will not be disturbed on appeal merely because it was based on an incorrect or insufficient reason." *State v. Byrd*, 25 Wn. App. 282, 289, 607 P.2d 321 (1980) (citing *Pannell v. Thompson*, 91 Wn.2d 591, 589 P.2d 1235 (1979)). Although there was evidence before the court that the University of Washington is conducting a research program on FAE, there was no showing that, as part of that program, the university is performing FAE evaluations, by court order or otherwise. In the absence of any such showing, it was not an abuse of the court's discretion to deny the motion. Accordingly, we need not reach appellant's contention that he was denied the effective assistance of counsel, at a critical stage of the proceedings, by the court's denial of the motion.

## IV

Appellant next challenges the trial court's determination that a disposition within the standard range would constitute a manifest injustice.

A court may impose a disposition outside the standard range if it determines that a disposition within the standard range would "effectuate a manifest injustice". RCW 13.40-.160(1). " 'Manifest injustice' means a disposition that would either impose an excessive penalty on the juvenile or would impose a serious, and clear danger to society in light of the purposes of this chapter". RCW 13.40.020(12).

■ A finding of manifest injustice must be supported by "clear and convincing evidence." RCW 13.40.160(1). To uphold such a finding on appeal, an appellate court must

---

[5]*See* RCW 13.40.150(3)(h)(iii).

determine that the reasons relied upon by the trial court "clearly and convincingly" support the finding of manifest injustice. RCW 13.40.230(2). In reviewing the finding, an appellate court is to engage in a 3-part test:

> (1) the reasons given by the trial court must be supported by the record; (2) those reasons must clearly and convincingly support the disposition [of a manifest injustice determination]; and (3) the disposition cannot be too excessive or too lenient.

*State v. P.*, 37 Wn. App. 773, 777, 686 P.2d 488 (1984) (quoting *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979)).

With several exceptions, the trial court adopted verbatim Ms. Hunt's list of aggravating factors contained on pages 8-13 of her manifest injustice hearing report. At the outset, we must say that we disapprove of this sort of "shotgun" approach. As properly perceived by appellant's counsel on appeal, the report contains numerous supposed aggravating factors which either are not supported by the evidence or do not clearly and convincingly support a manifest injustice disposition. This "shotgun" approach has needlessly complicated the process of appellate review, for the parties and for this court.

Rather than listing the appellant's numerous assignments of error in strict chronological order, we categorize them in accord with the nature of the alleged error and our ruling thereon.

### A. Aggravating Factors Which Are Not Supported by the Record

1. *Recent Criminal History/Short Time Elapsing Since Previous Offense.*

██ Based on *State v. Guitierrez*, 37 Wn. App. 910, 914-15, 684 P.2d 87 (1984), we hold that the record does not support this finding. Appellant's most recent offense occurred more than a year prior to his current offenses. That this is so constituted a mitigating rather than an aggravating factor.[6]

---

[6]The record before us does not support the State's contention that S.S. had a "glue sniffing" offense within a year of the current offenses.

2. *Infliction or Attempt to Inflict Serious Bodily Harm in Commission of the Crime.*

We hold that the record does not support this finding. The record reflects that appellant was negligent and even reckless in his effort to elude the police on May 18, 1990, but there is no evidence of any attempt to inflict serious bodily harm, or of any actual infliction of serious bodily harm.

### B. Reasons Stated Which Do Not Justify Disposition Outside Standard Range

1. We hold that the following reasons stated by the trial court do not justify a disposition outside the standard range.

■ A. Truancy from school. Although the record amply supports a finding that appellant is a habitual truant, the relationship, if any, between habitual truancy and a serious and clear danger to society in light of the purposes of the Juvenile Justice Act of 1977 is not apparent from this record.

■ B. Community supervision not adequate. The issue before the court was whether or not to impose an exceptional sentence *above* the standard range, and not *below* the standard range.[7] That community supervision would not provide the structure necessary for rehabilitation was thus irrelevant to the issue of whether the standard range of 16 to 24 weeks of confinement would provide sufficient opportunity for rehabilitation.

■■ C. Inadequate punishment; juvenile not held fully accountable in the past. A court's dissatisfaction with the standard range is not a proper justification for an exceptional sentence. *State v. Pascal*, 108 Wn.2d 125, 137-38, 736 P.2d 1065 (1987). Moreover, even if the appellant may not have been held fully accountable for his past offenses, such would not justify an enhanced punishment for his current offenses. Dissatisfaction with previous dispositions cannot

---

[7]The defense requested a sentence of 24 weeks and, alternatively, of no more than a year.

justify a finding of manifest injustice with respect to current offenses.

### C. Duplicative Findings

A number of the court's findings are needlessly duplicative. More is not necessarily better.

1. The court's finding that appellant could not receive adequate treatment and supervision within the standard range is duplicative of the court's finding that the appellant's behavior would likely remain unaltered if he were to be sentenced within the standard range.

2. The trial court's finding that previous supervision and detention have not been successful in curbing appellant's criminal behavior is duplicative of the court's finding that the appellant is highly likely to reoffend. In turn, each of these findings is subsumed in the court's finding that a sentence within the standard range would not effectuate an appropriate change in the appellant's behavior.

3. The court's finding that appellant has not succeeded in his prior supervisions and detentions is duplicative, at least in part, of the court's finding that appellant is unresponsive to the authority of detention officials. In turn, each of these findings, if not entirely duplicative, are closely related to the degree of likelihood that the appellant will reoffend.

Rather than addressing each of these duplicative findings individually, we treat them together. The record clearly and convincingly supports the court's finding that the appellant cannot be effectively treated if he were to be sentenced to only 16 to 24 weeks of confinement. Every professional who had worked with the appellant over the previous 4 years agreed that this was so. The record clearly and convincingly supports the court's finding that, unless he is effectively treated, appellant is highly likely to reoffend. Appellant's offense of choice is the taking of motor vehicles without their owners' permission. By appellant's own admission at the disposition hearing, one of the current offenses involved both the consumption of alcohol and a high speed chase as

appellant attempted to elude a police officer. The danger to society of this type of behavior is obvious. Unless the appellant's repetitive taking of motor vehicles is brought under control there is a high likelihood of injury or death to appellant and others. If appellant, who was 16 years old at the time of disposition, can be effectively treated, it is essential that this occur now, before he "graduates" from the juvenile system of justice.

We reject the appellant's contention that a finding of "highly likely to reoffend" is the equivalent of the same type of "nonsexual future dangerousness" rejected by the Supreme Court in *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991). *Barnes* involved the court's interpretation of specific provisions of the adult Sentencing Reform Act of 1981. We deal here with an entirely different statute. Nor are we persuaded that a finding of "highly likely to reoffend" must be supported by a mental health professional's opinion with respect to a nonsexual offender's amenability to treatment in a juvenile disposition. Here, the only purpose to be served by a disposition beyond the standard range is to allow appellant *the opportunity to be effectively treated for the protection of society.* Each of the trained professionals who testified opined that appellant's best hope for rehabilitation was long-term confinement during which his drug, alcohol and other emotional and behavioral problems could be addressed. Given his long history of repeatedly taking and driving other people's motor vehicles and the degree of his involvement with substance abuse, none of which behavior had been altered by previous treatment and short-term confinement, it begs reason to argue that only a mental health professional would have the expertise to determine that, unless effectively treated, this child is highly likely to reoffend.

We hold that the trial court did not err in determining that appellant cannot be effectively treated within the standard range and that, unless he receives effective long-term treat-

ment, he is highly likely to reoffend. These findings clearly and convincingly support the manifest injustice determination.

### D. Violation of Previous Dispositions and Diversions

The record supports this finding. The finding, in turn, supports the imposition of a manifest injustice exceptional disposition. *See* RCW 13.40.150(3)(i)(iv).

### E. Escalating Criminal Activity

There is evidence in the record that appellant's most recent episode of "joyriding" involved a high speed chase as appellant, who had consumed alcohol, attempted to elude the police. This attempt to flee at high speed constitutes escalated criminal activity not theretofore a factor in appellant's joyriding activity. Although appellant was convicted of obstructing a public servant as a result of his effort to flee the police, the high speed chase which was involved is not accounted for in the computation of the offender score. Driving after consuming alcohol also constitutes escalated offensive behavior. The record supports this finding. The finding, in turn, supports the imposition of a manifest injustice exceptional sentence. The increased danger to society from appellant's escalating criminal behavior is clearly demonstrated here.

### F. Parent's Inability To Control or Guide the Child

We hold that lack of parental ability to control a child's criminal behavior is a proper aggravating factor for a court to consider. If a child cannot be controlled by his or her parent, the danger or risk to society is commensurately increased. Whether or not a child's parent can exert normal control over a child's behavior is clearly related to the degree of risk to society where the child's behavior itself constitutes such a risk.

### G. Nature of Criminal Offenses and Criminal History

To the extent that the court may have considered factors which are necessarily subsumed in the determination of appellant's standard range as aggravating factors, certainly such was error. However, we believe the court's consideration of this factor was merely by way of an unnecessary restatement of its concern that the nature of appellant's most persistent offensive behavior, that of taking numerous motor vehicles without permission, particularly where the consumption of alcohol is involved and particularly where culminating in a high speed chase, is inherently dangerous to society.

In summary, although the trial court erred in numerous of its findings there remain several valid aggravating factors which are supported by the record and which clearly and convincingly support a finding of manifest injustice. Only if this court can determine that the trial court would have entered the same sentence on the basis of the remaining valid aggravating factors, however, can we affirm the exceptional sentence on appeal. *State v. Payne*, 58 Wn. App. 215, 222, 795 P.2d 134, 805 P.2d 247 (1990); *see also State v. Tunell*, 51 Wn. App. 274, 280, 753 P.2d 543, *review denied*, 110 Wn.2d 1036 (1988), *overruled in part on other grounds in State v. Batista*, 116 Wn.2d 777, 788, 808 P.2d 1141 (1991).

We have reviewed the trial court's oral decision. We find no indication from that decision that the court placed any significant weight on the factors which we have ruled invalid. In fact there is no mention of any of those factors in the oral decision. Instead, in summing up, the court made it clear that its finding of manifest injustice was based on the appellant's need for long-term confinement and treatment in order to protect society from the grave danger posed by his habitual taking of other peoples' motor vehicles, most recently after having consumed alcohol and involving a high speed chase. Accordingly, we are convinced that a remand

for resentencing would result in the same 80-week sentence which was here imposed.

## V

The length of an exceptional sentence will be upheld on appeal absent a showing of an abuse of discretion. *State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989). We hold that the trial court did not abuse its discretion in entering the exceptional disposition of 80 weeks, particularly in view of the testimony of each of the professionals involved that an exceptional disposition of 104 weeks was necessary to alter appellant's behavior and thereby protect society. The shorter term of confinement appears to have been based upon the time remaining before appellant's 18th birthday and the court's belief that effective treatment could be provided within that shorter period of time. There was thus a tenable basis for the court's determination.

Accordingly, we affirm.

FORREST and BAKER, JJ., concur.

Discretionary review denied (Apr. 20, 1993).