IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. VIVIANA RANGEL-OCHOA, Appellant. | No. 81699-3-I DIVISION ONE UNPUBLISHED OPINION |

COBURN, J. — A jury convicted Viviana "Vanesa" Rangel-Ochoa of burglarizing her friend's home. She appeals arguing that the trial court erred by admitting incriminating statements she made to police after her arrest. She also contends that the prosecutor engaged in misconduct during closing argument by stating she was "the unluckiest person." Rangel-Ochoa also appeals her restitution order claiming the trial court failed to hold an evidentiary hearing. We affirm.

FACTS

Tannya Saucedo Castro was at home in her bedroom one evening in January 2018. Around 6 p.m., she heard a loud bang at her front door, and footsteps up her stairs, and then two masked individuals dressed in black entered her bedroom. Despite the masks covering the lower part of their faces,

Citations and pin cites are based on the Westlaw online version of the cited material.

Saucedo Castro immediately recognized the individuals as her friends, Anthony "Ant" Abraham and Vanesa Rangel-Ochoa.[1]

Saucedo Castro stood frozen as Abraham searched her drawers, and Rangel-Ochoa began throwing items from Castro's closet into a plastic trash bag. Rangel-Ochoa took several luxury brand items: a pink Gucci bag, a pink Gucci purse, a brown MCM backpack, tan Louboutin heels, a pair of Gucci sneakers, a black and gold Yves Saint Laurent (YSL) purse, and a pink and purple MCM wallet. Saucedo Castro called out to Rangel-Ochoa, saying her name, and Rangel-Ochoa turned around and looked shaken with her eyes wide open. The two intruders quickly departed. Rangel-Ochoa then ran to a neighbor's home to call 9-1-1. Saucedo Castro later provided police with her home surveillance videos from the time of the crime showing the masked intruders coming and going from her home.

A few weeks later, two detectives went to Rangel-Ochoa's apartment in Renton to arrest her and transport her to the police department. During a recorded interview, Rangel-Ochoa acknowledged she was giving the interview freely, voluntarily, and without threats or promises of any kind. The detective then read Rangel-Ochoa her Miranda[2] rights. She then signed the statement waiving her rights and agreeing to be interviewed. While being interviewed, Rangel-Ochoa repeatedly denied any involvement in the burglary. She told the detectives that she had a falling out with Saucedo Castro because she "was

---

[1] The State later dismissed charges against Abraham.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

hitting on" Rangel-Ochoa's boyfriend. The detective then asked her about Abraham:

> [Detective]: Okay. And then at no time did he say that, hey, do you want to buy some stuff? Like some stolen stuff, or some expensive stuff? He ever ask you to buy some expensive stuff from him?
>
> [Rangel-Ochoa]: I don't feel comfortable saying that.

She denied that Saucedo Castro had given her any merchandise or that any of the missing items would be found at her apartment. She also denied owning any YSL or MCM products.

After the interview, the police obtained a search warrant and drove with Rangel-Ochoa back to her apartment telling her they would be executing a search warrant at her home. At that point, Rangel-Ochoa told the detective that she had two items—a YSL purse and MCM wallet—that had belonged to Saucedo Castro that she purchased from Abraham for $1,200 in cash. Police recovered these two items at Rangel-Ochoa's apartment, and Saucedo Castro later identified these items as the missing items belonging to her.

Before trial, the court held a CrR 3.5 hearing to determine the admissibility of Rangel-Ochoa's statements during the police station interview and in the patrol car. Rangel-Ochoa did not testify. The court ruled that all of Rangel-Ochoa's statements to police were both voluntary and admissible at trial.

A jury found Rangel-Ochoa guilty of residential burglary. By special verdict the jury found that the victim had been present when the crime was committed. A restitution hearing was scheduled after sentencing, at which time the trial court ordered Rangel-Ochoa to pay Saucedo Castro $4,384.30 for the

property losses related to the burglary. Rangel-Ochoa appeals.

DISCUSSION

CrR 3.5 Hearing

Rangel-Ochoa argues that the trial court erred when it did not suppress the statements she made to detectives in the police car claiming that these statements were made under coercion.[3] We disagree.

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution protect the privilege against self-incrimination. U.S. CONST. amend. V; WASH. CONST. art. I, § 9. While a defendant's compelled statements cannot be admitted at trial, voluntary statements are admissible. State v. DeLeon, 185 Wn.2d 478, 480, 374 P.3d 95 (2016). Generally, a defendant's statement is voluntary if it is "made spontaneously, is not solicited, and [is] not the product of custodial interrogation." State v. Ortiz, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985). To determine whether self-incriminating statements were made voluntarily, courts review the "totality of the circumstances." DeLeon, 185 Wn.2d at 486. We review a trial court's conclusion regarding the voluntariness of a defendant's statements based on whether there is substantial evidence in the record from which the trial court

---

[3] The State contends that Rangel-Ochoa waived her claim of coercion by not explicitly raising this issue below. We disagree. Rangel-Ochoa preserved this issue below. She argued that "[t]he State hasn't met their burden with regard to establishing that these were non-coercive statements. . . . We are arguing that . . . this at least begins in a very coercive environment. . . . [She] is arrested, pulled outside of her home, she's in her underwear, she is handcuffed, and it's our argument that the coercive nature of that interaction with law enforcement never fully dissipates."

could find voluntariness by preponderance of the evidence. State v. Rafay, 168 Wn. App. 734, 757–58, 285 P.3d 83 (2012) (quoting State v. Broadaway, 133 Wn.2d 118, 129, 942 P.2d 363 (1997)).

After taking testimony at the CrR 3.5 hearing, the trial court concluded that the State had met its burden by preponderance of the evidence that the statements Rangel-Ochoa made were voluntary. The trial court ruled:

> With respect to the statements made in the vehicle on the way back to the Defendant's residence, Det. Kim testified that he did not ask any questions of the Defendant, and that the Defendant chose to spontaneously offer information to Det. Kim. Thus, these statements were not in response to any interrogation, and as such, are admissible under CrR 3.5.

The record supports the trial court's findings and conclusions. The detective did not ask any questions of Rangel-Ochoa and merely explained that they were driving back to her apartment to execute a search warrant.[4] However, Rangel-Ochoa argues that the detectives, by driving with her back to her home to execute a warrant, employed a "coercive technique" and "psychological tool" "designed to improperly coerce a statement."

Rangel-Ochoa relies on Brewer v. Williams, 430 U.S. 387, 406, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977) for her contention that she was wrongfully coerced as a result of the police driving her to a location connected to the crime. In Brewer, the defendant, Williams, turned himself in upon advice of his attorney in a town 160 miles away from Des Moines where the murder took place. 430 U.S.

---

[4] The record is unclear as to why the detectives brought Rangel-Ochoa back to her home to execute the search warrant and whether they intended to release her if evidence of the burglary was not found after the search.

at 390. Des Moines police picked up Williams, who they knew was a former mental patient and "deeply religious." Brewer, 430 U.S. at 392-94. During the 160-mile car ride, police told Williams that without his assistance, the young girl he murdered might be denied a "Christian burial." Id. Though the Supreme Court noted that the detective "deliberately" set out to elicit information from Williams, the Court held that Williams's confession was inadmissible because he never waived his right to the assistance of counsel. Id. at 399-405. Brewer is distinguishable.

Contrary to Rangel-Ochoa's assertion, Brewer does not stand for the proposition that police engage in coercion when they drive with a suspect to a location connected with a crime. The Court explained, it was "unnecessary to evaluate the ruling of the District Court that Williams' self-incriminating statements were, indeed, involuntarily made." Id. at 397. Furthermore, the police "Christian burial" speech in Brewer is not at all comparable to police telling Rangel-Ochoa they were executing a search warrant in the instant case.

A defendant's incriminating statements are involuntary or coerced if, based on the totality of the circumstances, a defendant's will was overborne. Broadaway, 133 Wn.2d at 132. A police officer's "psychological ploys" may influence a suspect's decision to make an incriminating statement, but such statements are still voluntary so long as the decision to make a statement "is a product of the suspect's own balancing of competing considerations." State v. Unga, 165 Wn.2d 95, 102, 196 P.3d 645 (2008) (citations omitted). At the point police drove Rangel-Ochoa back to her apartment, she was aware of her

6

<u>Miranda</u> rights, and had demonstrated that she understood how to exercise them by declining to answer some questions. Understanding that police were about to search her apartment does not establish that her will was overborne through coercion.

Substantial evidence in the record shows Rangel-Ochoa's statements in the patrol car were not in response to interrogation and were voluntary. The trial court did not err in admitting Rangel-Ochoa's statements.

Prosecutorial Misconduct

Rangel-Ochoa next argues that the prosecutor engaged in misconduct when she characterized Rangel-Ochoa as "the unluckiest person" and thereby shifted the State's burden of proof and created a false choice by telling the jury they needed to find that all the State's witnesses were lying to acquit Rangel-Ochoa. We disagree.

A defendant may only prevail on a prosecutorial misconduct claim by showing the prosecutor's conduct was both improper and prejudicial. <u>In re Pers. Restraint of Glasmann</u>, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). A prosecutor is afforded "wide latitude" during closing argument to make reasonable inferences from the evidence, including the credibility of witnesses. <u>State v. Thorgerson</u>, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). In circumstances where the State's evidence contradicts a defendant's testimony, "a prosecutor may infer that the defendant is lying or unreliable." <u>State v. Miles</u>, 139 Wn App. 879, 890, 162 P.3d 1169 (2007). So long as a prosecutor does not express a personal opinion or incite the passions of a jury, a prosecutor may comment on a witness's

7

veracity. State v. Edvalds, 157 Wn. App. 517, 525, 237 P.3d 368 (2010). A prosecutor may not present the jury with a false choice that in order to acquit a defendant, they must find that the State's witnesses are lying or mistaken. State v. Fleming, 83 Wn. App. 209, 213, 921 P.2d 1076 (1996).

Rangel-Ochoa elected to testify at trial. She testified that she had purchased the YSL purse from a store in California and that a friend had purchased identical MCM wallets for her and Saucedo Castro. She stated that she initially told officers she did not own any YSL and MCM products because she believed they were talking about YSL and MCM "cosmetic products." She claimed that she never told the detectives that they would find Saucedo Castro's items in her home, and she never said that she bought the items from Abraham. The prosecutor asked her, "So [the detective] was lying when he said that on the stand?" Rangel-Ochoa responded: "Maybe he doesn't recall, but I am positive I never said that because that never happened." When Rangel-Ochoa was asked why Saucedo Castro would identify her as the burglar if she was not, she responded: "she's lying."

During closing argument and rebuttal, the prosecutor focused on the credibility of the witnesses:

> Somehow, in this case, Ms. Rangel-Ochoa was extremely unlucky because she had a best friend who pinned a case on her that she is innocent of. And somehow, she had a detective who's lying to you all on the stand. She must be the unluckiest person, to have had a victim claim was her best friend, that she was the one who did this when she had nothing to do with it, and that everyone else is lying. And that only she has all the right answers.

During rebuttal the prosecutor continued:

8

You heard Ms. Rangel-Ochoa's versions of what happened with law enforcement, and you heard defense's accusations of [the detectives]. That's unlucky for Ms. Rangel-Ochoa. For her to have had not just one, but maybe two crooked cops on her case, that is really unlucky for her that she found herself in that situation. . . . It is unlucky for her that every single person who testified in this case is apparently a liar, and that she's the only person telling the truth. That is unlucky for her.

I recognize what I just said sounds crazy, right[?]

The prosecutor then stated,

And I want to emphasize again, that the burden is on the State. It is my burden to prove this case to you beyond a reasonable doubt. But again, she has the right to be presumed innocent. She does not have the right to be presumed credible. . . . [I]s what she's saying, credible? . . . Because ultimately, you have the hard job here of having to really evaluate who here is telling the truth. Is it Ms. Rangel-Ochoa, and everyone else is out to get her here? Is it the victim and law enforcement who are telling the truth?

. . .

I'm going to ask you all to consider all of the witness' testimony that you've heard; to consider their credibility.

The prosecutor's remarks about Rangel-Ochoa being "unlucky" did not shift the burden from the State to the defense, nor did it present a false choice to the jury. The State and the defense provided conflicting witness testimony to the jury. Based on this conflicting testimony, it was not improper for the prosecutor to question Rangel-Ochoa's version of events and to ask the jury to make a determination on her credibility in comparison with the credibility of Saucedo Castro and the detectives. We have previously held that when " 'conflicting versions of the facts and the credibility of witnesses is a central issue, there is nothing misleading or unfair in stating the obvious: that if the jury accepts one version of the facts, it must necessarily reject the other.' " Rafay, 168 Wn. App.

9

at 837 (quoting State v. Wright, 76 Wn. App. 811, 825, 888 P.2d 1214 (1995)).

The actions of the prosecutor in this case stand in contrast with other cases where this court has concluded that a prosecutor's comments were improper in the context of presenting a false choice to the jury. In State v. Barrow, the prosecutor told jurors that " 'in order for you to find the defendant not guilty on either of these charges, you have to believe his testimony and you have to completely disbelieve the officers' testimony. You have to believe that the officers are lying.' " 60 Wn. App. 869, 874-75, 809 P.2d 209 (1991). Similarly, in Fleming, this court found the prosecutor improperly shifted the State's burden when they told the jury " 'to find [the defendants] not guilty of the crime . . . you would have to find either that [the victim] has lied about what occurred . . . or that she was confused.' " Fleming, 83 Wn. App. at 213.

Unlike in Barrow and Fleming, at no point did the prosecutor in this case direct the jury that in order to acquit Rangel-Ochoa they needed to conclude that Saucedo Castro or the detectives were lying or mistaken. Here, the prosecutor simply argued what evidence the jury should consider in determining the credibility of the witnesses. The prosecutor's statements were not improper.

Rangel-Ochoa makes an additional claim that the prosecutor improperly appealed to the emotions of the jury when referring to Saucedo Castro's decision to move from her home with her daughter after the burglary. Again, we disagree.

A prosecutor commits misconduct when they seek a conviction based on emotions rather than evidence. State v. Fuller, 169 Wn. App. 797, 821, 282 P.3d 126 (2012). In the case at issue, the prosecutor made these statements to

10

dispute Rangel-Ochoa's testimony that Saucedo Castro was lying about the burglary. The prosecutor said,

> I don't know about you all, but I tend to think that moving is a bit of a pain.
>
> Would a person move everything they have, all of their belongings, move their kid from their school, move them to a completely different city, because she's so scared of this, if none of that was even true to begin with?
>
> What would her incentive have been to do that?

These statements were in response to Rangel-Ochoa's testimony that Castro fabricated the burglary. These statements were not improper.

## Restitution Order

Lastly, Rangel-Ochoa contends that she was denied due process when the court failed to hold an evidentiary hearing on restitution.

A judge must order restitution whenever a defendant is convicted of an offense that results in damage or loss of property. RCW 9.94A.753(5). If a defendant disputes the amount of restitution to be paid to a victim, the State must prove the amount of restitution by a preponderance of the evidence. State v. Tobin, 161 Wn.2d 517, 524, 166 P.3d 1167 (2007). "Evidence is sufficient if it affords a reasonable basis for estimating loss." State v. Dedonado, 99 Wn. App. 251, 256, 991 P.2d 1216 (2000). Hearsay statements are permitted at restitution hearings, and where a restitution is based on a State's affidavit—which includes the hearsay statements of another party—"the degree of corroboration required by due process is not proof of the truth of the hearsay statements 'beyond a reasonable doubt', but rather, proof which gives the defendant a sufficient basis

for rebuttal." State v. Kisor, 68 Wn. App. 610, 620, 844 P.2d 1038 (1993) (quoting State v. S.S., 67 Wn. App. 800, 808, 840 P.2d 891 (1992)). We will not disturb a trial court's order of restitution on appeal absent an abuse of discretion. Tobin, 161 Wn.2d at 523.

The court held a restitution hearing on August 13, 2020. Shortly after the burglary, Saucedo Castro submitted a victim loss statement to the prosecutor, indicating the combined value of her missing items was $4,530. At the restitution hearing, the State submitted additional corroborating documentation of the missing items, which included photos and values of similar designer products found online, totaling $4,384.30. This was the amount requested by the State for restitution.

The defense objected to the admission of the additional documents but did not request to continue the hearing. The trial court concluded:

> I think that the documentation provided by the State is sufficient to meet its burden. It's not an exacting burden; it's preponderance of the evidence. And I think, even if I were not to consider the new materials provided today, I do have the declaration of the -- of the victim in this case.

The court ordered restitution in the amount of $4,384.30.

At the restitution hearing, the State provided, through declarations from the victim and its corroborating documentation, a total that reflected an approximate value of Saucedo Castro's stolen items. Though restitution must be based on "easily ascertainable damages," it does not need to be "established with specific accuracy." State v. Kinneman, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). A "precise determination" is not required. State v. Bennett, 63 Wn. App.

530, 535, 821 P.2d 499 (1991).  The trial court did not abuse its discretion in ordering Rangel-Ochoa to pay restitution in the amount of $4,384.30.

## CONCLUSION

We affirm Rangel-Ochoa's judgment and sentence.

Coleman, J.

WE CONCUR:

Mann, C.J.

Dwyer, J.

13