70 Wn. App. 659 (1993)
855 P.2d 280
THE STATE OF WASHINGTON, Respondent,
v.
J.S., Appellant.
No. 31209-0-I.
The Court of Appeals of Washington, Division One.
June 21, 1993.
Elizabeth Govaerts and Kathleen A. Barry of Washington Appellate Defender Association, for appellant.
Norm Maleng, Prosecuting Attorney, and Greg Hubbard, Deputy, for respondent.
*661 PER CURIAM:
J.S. seeks accelerated review pursuant to RAP 18.13 of the manifest injustice disposition imposed pursuant to his conviction for one count of first degree child molestation. A commissioner referred the motion to a 3-judge panel for review. We affirm the disposition.

I
On April 4, 1991, J.S. entered a guilty plea to one count of first degree child molestation against his 4-year-old stepsister B., during the period of January 1 and March 31, 1990. The disposition hearing took place on July 30, 1992.[1] The standard range was 8 to 12 weeks' commitment.
Probation counselor Tim Bernhardt requested a manifest injustice disposition of 104 weeks, relying upon three aggravating factors: the victim was particularly vulnerable due to age; after a year of voluntary counseling, J.S. was in denial; and, finally, J.S. was not cooperative with the probation department because he followed his attorney's advice not to discuss the incidents with Bernhardt without counsel being present.
Regarding the denial factor, in November 1990, J.S. voluntarily entered into counseling with Dr. Stephen Cummings, with whom he remained in counseling until the disposition hearing. After approximately 6 months of treatment with Cummings, J.S. denied sexually assaulting B.J.S. explained that he admitted guilt because his father and stepmother coerced him to do so and he pleaded guilty only to stop their verbal and emotional abuse.
Bernhardt's recommendation rested primarily upon the recommendation of Dr. Rawlings, a clinical psychologist who specializes in assessment and treatment of sex offenders. Rawlings testified at the disposition, explaining that he evaluated J.S. in the fall of 1990.
*662 Rawlings initially recommended 9 to 12 months of residential treatment followed by 1 1/2 to 2 years of outpatient treatment. Based upon J.S.' current denial, however, Rawlings recommended commitment to the Department of Juvenile Rehabilitation (DJR) for 1 1/2 to 2 years. Rawlings testified that it is not possible for a person to make progress in sexual offender treatment if that person denies having a problem, because the first step in treatment requires taking responsibility for the sexually inappropriate behavior.
Rawlings testified that J.S.' progress in the last year, in areas such as improved behavior at school, academic performance, reduction of lying and stealing, did not have an impact on his recommendation. He testified although these improvements were desirable, they failed to address the issue of sexual misconduct. Rawlings testified that short of J.S.' taking responsibility for assaulting B., Rawlings' recommendation would not change.
The defense strongly opposed the manifest injustice recommendation. Although Dr. Cummings did not testify, counsel submitted a written report by Cummings. Cummings wrote that when J.S. denied assaulting B., Cummings requested that he submit to a polygraph test. Because the test results were inconclusive, and because the circumstances of the crime prevented Cummings from being able to determine whether J.S. sexually assaulted B., the focus of therapy evolved to other issues, such as familial conflict, self-esteem, issues of sexuality, and J.S.' concern that he may be homosexual.
Cummings stated that J.S. has made progress in therapy. For the first time in his life, J.S. has some friends, is no longer picked on at school, his grades have consistently improved and he has begun to psychologically mature. The 20 months of therapy resulted in J.S. gaining insight and information into sexuality and how a sexual assault victim would be injured by the assault, as well as the consequences of reoffending.
Assuming that J.S. did sexually assault B., Cummings stated "I can assure the Court that he is virtually a zero risk *663 to reoffend." In addition, Cummings stated that rather than helping J.S., a 2-year commitment to DJR would be detrimental to the progress J.S. has made. Cummings recommended that J.S. continue to receive community-based treatment with Cummings for at least 1 year or that the court impose a special sexual offender disposition alternative (SSODA).[2]
Defense counsel introduced a current report card, showing significant progress by J.S. Defense counsel also introduced a 21-page parenting plan evaluation that documented extensive physical, emotional and psychological abuse in the household of J.S.' father and stepmother.
J.S.' mother testified that after J.S. moved in with her, and began counseling with Cummings, his behavior at school and home improved significantly. She testified that she vigilantly monitors J.S.' behavior and has seen no sexual misconduct on his part.
The court imposed a manifest injustice disposition of 104 weeks. The court noted that the disputed question between the parties and their respective experts was the type of treatment needed for J.S. Between the two experts, the court agreed with Dr. Rawlings' determination that J.S.' denial rendered him a danger to society, requiring imposition of an exceptional sentence within which to provide necessary treatment. The court further ruled the victim was particularly vulnerable due to age and that J.S. abused a position of trust.

II
[1] A trial court may impose a disposition outside the standard range if it determines that a disposition within the standard range would "effectuate a manifest injustice". RCW 13.40.160. A "manifest injustice" includes a disposition that would "impose a serious, and clear danger to society in light of the purposes of this chapter." Former RCW 13.40.020(12). RCW 13.40.230(2) provides:

*664 To uphold a disposition outside the standard range,... the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range ... would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.
In order to withstand appellate review, the standard range and the juvenile before the court must present, beyond a reasonable doubt, a clear danger to society. State v. Rhodes, 92 Wn.2d 755, 760, 600 P.2d 1264 (1979); RCW 13.40.230(2).

NEED FOR TREATMENT
J.S. challenges the court's determination that in light of his denial, he presents a danger to society and a long-term commitment to DJR was needed to protect the community. First, relying upon State v. Vermillion, 66 Wn. App. 332, 348, 832 P.2d 95 (1992), review denied, 120 Wn.2d 1030 (1993) and State v. Garibay, 67 Wn. App. 773, 927, 841 P.2d 49 (1992), J.S. argues that by focusing upon his denial, the court penalized him for his professed innocence. In both cited cases, the court held that a trial judge may not rely upon a defendant's professed innocence in imposing an exceptional sentence under the Sentencing Reform Act of 1981, because to do so essentially forces a defendant to admit to guilt.
[2] In this case, however, the court considered J.S.' denial as relevant from a treatment perspective. As Rawlings testified, effective sex offender treatment requires admission by the offender that he has a problem and needs help. Because the juvenile system retains treatment and rehabilitation of the offender as a goal, unlike the adult system, the trial court properly considered denial as relevant for purposes of affording effective treatment. See State v. Rice, 98 Wn.2d 384, 392-93, 655 P.2d 1145 (1982) (because the juvenile system focuses on twin goals of punishment and rehabilitation of juvenile offenders, it differs materially from the adult sentencing system in which punishment is the primary purpose).
J.S. next argues that the record does not support the court's finding that J.S. is not amenable to community-based *665 treatment and that absent commitment to DJR he presents a danger to the community. Recognizing the court relied upon Rawlings in reaching this determination, J.S. takes issue with Rawlings' recommendation.
He argues that, unlike Cummings, who had been treating J.S. for 20 months, Rawlings evaluated J.S. on only four occasions. Unlike Cummings, who was familiar with J.S.' current progress, Rawlings' evaluations were completed 19 and 16 months before the disposition hearing. Finally, J.S. argues that because he has made consistent improvement as a result of treatment with Cummings, as manifested by his lack of reoffending since commission of the offense, Rawlings' determination that J.S. presents a risk to the community is unreasonable.
These same arguments, however, were fully developed before the trial judge, who was presented with the difficult task of deciding which of the two widely divergent expert opinions most fully accounted for J.S.' needs. This court will not second-guess the trial court's judgment on this question. Having accepted Rawlings' recommendations regarding J.S.' treatment needs, the recommendation clearly and convincingly supports the trial court's determination that a disposition within the standard range would constitute a manifest injustice.

ABUSE OF TRUST
[3] J.S. argues the record does not support the court's finding that J.S. abused a position of trust by sexually assaulting his stepsister. Although the reasons given by a judge must support a manifest injustice disposition beyond a reasonable doubt, the reasons need only be supported by substantial evidence. State v. P.B.T., 67 Wn. App. 292, 301, 834 P.2d 1051 (1992), review denied, 120 Wn.2d 1021 (1993).
[4] The relevant factors in determining whether a defendant abused a position of trust are the duration and degree of the relationship involved. State v. Grewe, 117 Wn.2d 211, 813 P.2d 1238 (1991). J.S. argues that apart from the fact that he and B. lived together in the same household from *666 June 1989 to November 1990 as stepsiblings, the record fails to establish a trust relationship. We disagree.
A familial relationship is sufficient to establish a trust relationship. For example, in State v. Overvold, 64 Wn. App. 440, 447, 825 P.2d 729 (1992), a father committed indecent liberties upon his daughter. The court held that the father-daughter relationship was sufficient to establish an abuse of trust. In State v. Hamby, 69 Wn. App. 131, 848 P.2d 198 (1993), the court examined an exceptional sentence imposed upon a mother for sexually assaulting her daughters. Relying upon Overvold, the court held: "the trust relationship that bonds individuals residing in the same household for an extended period of time is likely to be particularly strong and the abuse of that relationship is thus particularly egregious." Hamby, at 132. The record contains substantial evidence of a trust relationship.
[5] J.S. also argues the record does not support the conclusion that he used the trust relationship, if indeed one existed, in order to commit the crime. The State correctly argues, however, that there need not be direct evidence that the position of trust was relied upon to perpetrate the crime. Thus, if the fact of the stepsibling relationship suffices to establish a trust relationship, it necessarily follows that but for that relationship, J.S. would not have been able to abuse B. See State v. P.B.T., supra (where appellant, as the senior patrol leader on Boy Scout expedition, was in a position of trust in relation to the victim, the evidence logically led to the conclusion that appellant abused the position of trust in order to commit the crime of second degree child molestation).

VICTIM VULNERABILITY
[6] J.S. argues the court erred by relying upon the victim's age as an aggravating factor because the offense for which he was convicted contains age limits.[3] We disagree. A victim's extreme youth may constitute an aggravating factor *667 even if the victim's age is an element. State v. Chadderton, 119 Wn.2d 390, 395, 832 P.2d 481 (1992). Thus, the court's finding that B., who was 4 at the time of the abuse, was particularly vulnerable due to age is supported by the record. See, e.g., State v. Fisher, 108 Wn.2d 419, 739 P.2d 683 (1987) (exceptional sentence for indecent liberties against 5-year-old victim).
We affirm. Because J.S.' appeal of the trial court's denial of the motion to withdraw the guilty plea remains pending in this court, review is not terminated.
NOTES
[1] The 15-month delay between entry of the plea and the disposition is attributable to a motion for discretionary review, which was denied, and a motion to withdraw the guilty plea, which was also denied.
[2] SSODA authorizes suspension of the standard range subject to conditions that include sexual offender treatment. RCW 13.40.160(5).
[3] For first degree child molestation, the victim must be younger than 12 and the offender at least 36 months older than the victim. RCW 9A.44.083.