[No. 32042-4-I. Division One. July 18, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. S.H., *Appellant*.

*In the Matter of the Personal Restraint of* S.H., *Petitioner.*

4

*Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Stokstad, Deputy; Christine O. Gregoire, Attorney General,* and *Richard A. McCarten, Assistant,* for respondent.

BAKER, J. — S.H. appeals from a juvenile court manifest injustice disposition of 260 weeks on one count of rape of a child in the first degree. He contends the court erred in (1) finding certain aggravating circumstances, (2) imposing the manifest injustice disposition, and (3) considering the possibility that S.H. could be released from the Department of Juvenile Rehabilitation (DJR) before the maximum term. He also contends the disposition was clearly excessive. Because the court improperly considered the possibility of early release when it set the term for S.H.'s commitment to DJR, we reverse the disposition.

S.H. also seeks relief by way of personal restraint petition (PRP) from his confinement at Maple Lane School, contending that (1) his treatment providers must be certified under RCW 18.155, (2) he is not receiving adequate sex offender treatment or being treated by qualified treatment providers, and (3) he was afforded ineffective assistance of counsel at his disposition. We deny the petition.

Thirteen-year-old S.H. spent a weekend at a foster home with several other children, including the 8-year-old victim, K. S.H. entered the room where K. was sleeping, locked the door, and raped her. Although S.H. covered K.'s mouth to stifle her cries for help, adults in the house nevertheless heard the commotion, forced their way into the room and pulled S.H. off of K.K. was taken to the hospital, but the State produced no medical evidence of K.'s injuries at the disposition.

At the disposition hearing, social worker McCutcheon's evaluation discussed S.H.'s dysfunctional family history and extensive deviant sexual history. According to McCutcheon, S.H. has problems with extreme deviant arousal, sexual identity, voyeurism, bestiality, and is in poor control of his sexual impulses. McCutcheon recommended treatment in a closed, structured environment for up to 4 years.

Probation counselor Trujillo reported that S.H. has an extensive history of sexual involvement as victim, victimizer, and consenting participant. The results of his penile plethysmography testing indicated high levels of arousal to all stimuli. S.H. was reported to have numerous risk factors including, but not limited to, lack of remorse, limited understanding of the wrongfulness of the rape, and prior failed treatment by two treatment providers. The Department of Youth Services Sex Offender Program assessed S.H. to be a high risk to reoffend with or without treatment. Trujillo recommended a disposition of 260 weeks, primarily to protect the community.

At the disposition hearing, S.H.'s counsel conceded that a manifest injustice disposition was appropriate, but objected to the 5-year recommendation, arguing that it was not related to treatment goals. Counsel recommended, based on a 2-year-old evaluation from a previous disposition, that a commitment of $2^1/2$ to 3 years was appropriate and consistent with treatment goals.

The trial court made the following findings of fact to which S.H. assigns error:

## VI.

The victim was particularly vulnerable. The 13 year old respondent [S.H.] who was 5-feet 11-inches tall and 190 pounds furtively entered the room of the eight year old victim. The victim was alone sleeping in bed when the respondent . . . committed the crime.

## VII.

The crime was committed in an especially depraved manner. The depravity of the offense is evidenced by the respondent's entering the bedroom of the victim, locking the door, and forcefully engaging in vaginal intercourse with the eight year old victim. [T]he respondent put his hand over the victim's mouth to silence her repeated screams for help. When help arrived they had to knock the bedroom door down and physically pull the respondent off of the screaming victim.

## VIII.

The respondent is a high risk to reoffend. The respondent previous to this crime was in a one year in-patient sexual deviancy treatment program. Additionally, the respondent was also in a community based sexual deviancy treatment program. According to those who evaluated the respondent, he is a high risk to reoffend with or without further treatment.

## IX.

In the course of the rape he could have inflicted serious bodily injury. The eight year old victim sustained vaginal injury. Respondent could easily have suffocated the victim by placing his hand over her mouth.

The court entered a manifest injustice disposition of 260 weeks, based on McCutcheon's recommendation of up to 4 years of treatment and the court's understanding that S.H. could be released by DJR after he served 80 percent of the disposition.[1] S.H. was not given a special sex offender disposition alternative (SSODA) and is currently committed to DJR at the Maple Lane School in Centralia.

S.H. alleges that he has not been seen by a psychiatrist or psychologist or had any psychological testing at Maple Lane. He is working with the *Pathways* book, which he completed once before. In addition to group treatment, S.H. usually meets with his counselor for half an hour each week. According to social worker Thomas Dunne, the minimum requirements for counselors at Maple Lane are a B.A. in a social science field and 1 year of experience with youth. Maple

---

[1]The standard range was 30 to 40 weeks.

Lane has only a part-time psychiatrist. The facility has 167 resident juveniles but a capacity of only 135.

Meredith Ingraham supervises the sex offender treatment program at Maple Lane for approximately 40 juveniles, and is directly involved in some of S.H.'s treatment sessions. She is the only sex offender treatment provider at Maple Lane who is certified under RCW 18.155. Ingraham is personally involved in S.H.'s group treatment about once a month.

S.H. also provides the declaration of a certified sex offender treatment provider, Dr. Wheeler. Wheeler states there are several deficiencies in S.H.'s treatment plan. S.H. has specific mental disorders not adequately addressed by his plan and is not receiving the treatment recommended by McCutcheon. Maple Lane treatment providers do not have the necessary qualifications to provide proper individual psychotherapy for S.H.

The State submits Ingraham's declaration that S.H. is participating in group treatment, including taking responsibility, identifying offense patterns, and developing victim awareness. S.H. is involved in classes on substance abuse, anger management, personal effectiveness, sex/health education, and is in regular ninth grade school. S.H. will participate in group treatment as long as he is at Maple Lane. His counselor, who has a B.A. in theology, and 8 years' experience with juvenile offenders (2 with sex offenders), is continuously available and monitors S.H.'s progress. S.H. is beginning to show remorse and changes in his behavior and may be placed in a residential home in 1 to 2 years.

## I

S.H. contends that the trial court's findings of fact do not sufficiently comply with RCW 13.40.160(4)(c) and JuCR 7.12(e). Both the court's oral findings at the disposition hearing and the written findings of fact and conclusions of law found that a manifest injustice disposition was appropriate.[2]

---

[2]The written findings are more extensive and contain different reasons than the oral disposition. Written findings and conclusions are not necessary to support a manifest injustice disposition. *State v. Bourgeois*, 72 Wn. App. 650, 654

RCW 13.40.160(4)(c) requires a court to "enter reasons" for its conclusion that a standard range sentence would effect a manifest injustice. JuCR 7.12(e) requires the court to set forth the portions of the record material to the disposition. Conclusory findings do not comply with these provisions. *See State v. Strong*, 23 Wn. App. 789, 793-94, 599 P.2d 20 (1979). However, the trial court here gave factual reasons for the disposition and the brief record is small enough for this court to determine whether those reasons are supported by the record. Reversal is not required. The balance of S.H.'s assignments of error present questions of law which can be analyzed on appeal from undisputed facts.

## II

S.H. contends several aggravating factors relied on by the trial court are not supported by the record or do not support the manifest injustice disposition. The court's findings of fact are reviewed under a clearly erroneous standard and will be reversed only if " 'no substantial evidence supports its conclusion.' " *State v. J.N.*, 64 Wn. App. 112, 114, 823 P.2d 1128 (1992) (quoting *State v. Grewe*, 117 Wn.2d 211, 218, 813 P.2d 1238 (1991)). Whether an aggravating factor justifies a departure from the standard range is a question of law. *State v. Scott*, 72 Wn. App. 207, 213, 866 P.2d 1258 (1993).

> An aggravating factor is legally adequate to justify a sentence outside of the standard range as long as the aggravating factor was not necessarily considered by the Legislature in establishing the standard range, and as long as the asserted aggravating factor is "sufficiently substantial and compelling to distinguish the crime in question from others in the same category."

*Scott*, 72 Wn. App. at 213-14 (quoting *State v. Grewe*, 117 Wn.2d 211, 216, 813 P.2d 1238 (1991)).

S.H. first contends the finding that the victim was particularly vulnerable is not supported by the record. Particular vulnerability of the victim is a statutory aggravating factor under RCW 13.40.150(3)(i)(iii). The court relied on

n.3, 866 P.2d 43 (1994); *State v. E.J.H.*, 65 Wn. App. 771, 774-75, 830 P.2d 375 (1992).

S.H.'s large size and his age. Although the trial court made no finding about the size of the victim, we can safely assume that the trial court commented on S.H.'s size as contradistinguished from an 8-year-old girl. An age disparity and some degree of size disparity are inherent in the crime of rape of a child in the first degree, which requires that the victim be at least 2 years younger than the perpetrator and under the age of 12. RCW 9A.44.073(1). K. was not significantly younger than other victims of this crime. When age is an element of the crime, it may be used to justify a departure from standard range sentence only "if the extreme youth of the victim in fact distinguishes the victim significantly from other victims of the same crime." *State v. Garibay*, 67 Wn. App. 773, 779, 841 P.2d 49 (1992). *See State v. J.S.*, 70 Wn. App. 659, 666-67, 855 P.2d 280 (1993). The trial court also relied on the fact that K. was asleep at the time. A sleeping victim may be particularly vulnerable due to inability to resist before being attacked. *State v. Hicks*, 61 Wn. App. 923, 931, 812 P.2d 893 (1991). We conclude that the challenged finding is not clearly erroneous. The age difference factor does not independently support the finding, but taken together with the other factors considered by the trial court, the finding is sustainable.

■ S.H. also challenges the finding that the crime was committed in a particularly depraved manner. RCW 13.40.150(3)(i)(ii). A finding of a heinous, cruel or particularly depraved manner of the commission of a crime as an aggravating circumstance requires that the facts of the particular crime go beyond what would ordinarily constitute the crime. *See State v. Payne*, 58 Wn. App. 215, 220, 795 P.2d 134, 805 P.2d 247 (1990). The record indicates that S.H.'s crime was committed in a forcible and maniacally obsessive manner. Forcible compulsion is not an element of rape of a child in the first degree. RCW 9A.44.073(1). S.H. committed the offense while adults were in the house, and had to be physically pulled off the victim. These factors are not inherent in the elements of the crime and could fairly be considered

depravity of a kind or degree not normally associated with rape of a child. We sustain the finding.

██ The trial court's finding that S.H. *could have* inflicted serious bodily injury on the victim is not sufficient on its face. The relevant statutory aggravating factor requires that the defendant either "inflicted or attempted to inflict serious bodily injury to another". RCW 13.40.150(3)(i)(i). There were no medical reports to establish that K. had been injured or to what extent. We cannot affirm this finding without competent evidence in the record as to the nature and severity of the victim's injuries or an indication that serious injury was attempted.[3]

██ Finally, S.H. assigns error to the court's finding that S.H. is at a high risk to reoffend. A high risk that a juvenile will reoffend is a valid ground for a manifest injustice disposition. *J.N.*, 64 Wn. App. at 114 (citing *State v. P.*, 37 Wn. App. 773, 686 P.2d 488 (1984)); *State v. N.E.*, 70 Wn. App. 602, 606-07, 854 P.2d 672 (1993). This finding is supported by evidence of S.H.'s extraordinary prior history, obsessive manner of the commission of the present offense, and prior failed community based treatment. The record presents an alarming picture of extreme sexually dysfunctional behavior and a predatory young man who is very likely to reoffend. The record contains little or no evidence to the contrary.

## III

S.H. contends that the trial court's reasons do not support the manifest injustice disposition. We disagree.

> To uphold a disposition outside the standard range . . . the court of appeals must find (a) that the reasons supplied by the disposition judge are supported by the record which was before the judge and that those reasons clearly and convincingly support the conclusion that a disposition within the range . . . would constitute a manifest injustice, and (b) that the sentence imposed was neither clearly excessive nor clearly too lenient.

RCW 13.40.230(2).

---

[3]To the extent the record indicates that the assault was *capable* of causing serious bodily injury, this finding, at best, lends support to the finding of particular depravity.

■ The insufficient finding that S.H. could have inflicted serious injury is not necessary to affirm the disposition. This court can affirm a manifest injustice finding if one or more of the factors supported by the record clearly and convincingly support the disposition and we can determine that the trial court would have entered the same sentence on the basis of the remaining valid aggravating factors. *State v. S.S.*, 67 Wn. App. 800, 818, 840 P.2d 891 (1992) (citing *State v. Payne*, 58 Wn. App. 215, 222, 795 P.2d 134, 805 P.2d 247 (1990)). The disposition is clearly supported by the valid findings, and we have no doubt that the trial court would have entered a manifest injustice finding on the strength of those findings alone.

■ The length of the disposition was based on treatment recommendations. The record indicates that the court adopted McCutcheon's 4-year treatment recommendation and increased it to 5 years based on the expectation that S.H. would only serve 80 percent of the disposition. Responding to a need for treatment is an appropriate basis for a manifest injustice disposition and is determined by the specific needs of the particular defendant. *J.N.*, 64 Wn. App. at 117 (citing *State v. Rice*, 98 Wn.2d 384, 392, 655 P.2d 1145 (1982)). It is within the trial court's discretion to choose among recommendations from different credible expert opinions. *J.S.*, 70 Wn. App. at 665.[4]

## IV

■ S.H. contends that the 260-week disposition is clearly excessive. We disagree. RCW 13.40.230(2)(b) requires a

---

[4]The need to protect the community from S.H.'s behavior provides a second supportable basis for the manifest injustice disposition. Protection of society from dangerous juvenile offenders is an appropriate basis for a disposition outside the standard range. In *State v. E.J.H.*, 65 Wn. App. 771, 830 P.2d 375 (1992), the juvenile objected that the sentence was excessive "because the record does not contain a showing that DJR could offer the testing and treatment needed to diagnose and address [the juvenile's] needs." *E.J.H.*, 65 Wn. App. at 777. Without addressing the objection the reviewing court noted that the disposition was also based on the need to protect society. *E.J.H.*, 65 Wn. App. at 777. In *State v. Tauala*, 54 Wn. App. 81, 87-88, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989), the trial court did not abuse its discretion in exceeding the probation counselor's recommendation in order to protect the public.

determination that a disposition is neither clearly excessive nor clearly too lenient. *E.J.H.*, 65 Wn. App. at 775. The length of an exceptional sentence is reviewed under an abuse of discretion standard. *S.S.*, 67 Wn. App. at 819 (citing *State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989)).

■ ■ First, S.H. argues the disposition is excessive because it is disproportionate (seven times the standard range). The reasonableness of a disposition as a multiple of the standard range is not the appropriate test in this case. A sentence is excessive only when it is not justified by any reasonable view of the record. *Tauala*, 54 Wn. App. at 87. The standard range is based on the criminal history and the type of crime and is essentially a punitive figure. Here, the supportable basis for the length of the manifest injustice disposition is S.H.'s need for treatment and the need to protect the community. Where treatment is the sole basis for the disposition, the sentence is excessive if it exceeds the period for which treatment is needed or available. *P.*, 37 Wn. App. at 779. The figure of 260 weeks has a reasonable, supportable relationship to S.H.'s need for treatment and is therefore not clearly excessive.

Next S.H. contends that the disposition is clearly excessive because it exceeds McCutcheon's recommendation. The court based its decision to increase McCutcheon's recommendation on the expected application of an "80 percent rule" which could result in S.H.'s early release into the community. Whether the court erred in considering the possibility of early release is discussed in section V.

Finally, S.H. contends the court failed to consider mitigating circumstances. It is a statutory mitigating factor that the respondent's conduct neither caused nor threatened serious bodily injury or the respondent did not contemplate such a possibility. RCW 13.40.150(3)(h)(i). The court's finding that S.H. could have seriously injured K., while not supportable as an aggravating factor, invalidates this mitigating factor.

S.H. also contends that his mental condition and the failure of the adult supervision limited his culpability. A

mental condition which reduces the juvenile's culpability is a mitigating factor. RCW 13.40.150(3)(h)(iii). *N.E.*, 70 Wn. App. at 607. The record does not clearly indicate that the court failed to consider these factors. While these factors arguably reduce S.H.'s responsibility for the crime, they support, rather than detract from, a finding that S.H. is likely to reoffend and needs treatment in a secure environment where he cannot reoffend.

## V

S.H. contends that the court erred in determining that DJR may release him after he has served 80 percent of the disposition. S.H. argues that the Juvenile Justice Act of 1977 (JJA) does not give DJR the authority to release juveniles serving a manifest injustice disposition before the maximum term. We do not agree that DJR's authority is so restricted.

Under the disposition standards for minor/first, middle and serious offenders, when the court imposes a manifest injustice disposition, "the court shall sentence the juvenile to a maximum term, and the provisions of RCW 13.40.030(5), as now or hereafter amended, shall be used to determine the range." RCW 13.40.0357. RCW 13.40.030 was amended in 1989, changing subsection (5) to (2).[5]

> (2) In developing recommendations for the permissible ranges of confinement under this section the commission shall be subject to the following limitations:
>
> . . . .
>
> (c) Where the maximum term in the range is more than one year, the minimum term in the range may be no less than eighty percent of the maximum term in the range.

RCW 13.40.030. The minimum term in this case would be 80 percent of the maximum term, or 208 weeks.

S.H.'s argument that DJR has no authority to release a juvenile from a manifest injustice disposition before the maximum term is based on an untenable reading of RCW 13.40.210(1).

---

[5]Laws of 1989, ch. 407, § 3. RCW 13.40.160 refers specifically to RCW 13.40.030(2) for determining the range in manifest injustice dispositions for minor/first, middle and serious offenders.

The secretary [of the Department of Social and Health Services] shall, *except in the case of a juvenile committed by a court to a term of confinement in a state institution outside the appropriate standard range for the offense(s) for which the juvenile was found to be guilty established pursuant to RCW 13.40.030, as now or hereafter amended,* set a release or discharge date for each juvenile committed to its custody which shall be within the prescribed range to which a juvenile has been committed.

(Italics ours.) RCW 13.40.210(1). This section by its own terms does not apply to manifest injustice dispositions. If, as S.H. contends, this section prohibited the release of juveniles serving manifest injustice dispositions prior to serving the maximum term, portions of both RCW 13.40.160 and RCW 13.40.0357 would be meaningless, requiring the determination of a minimum term which had no purpose. The trial court correctly determined that DJR would set a minimum term at 80 percent of the maximum term and could release S.H. as early as the end of that minimum term.

 S.H. next contends that the trial court erred in considering his possible early release in determining the length of the sentence. We agree. The possibility that a juvenile may be released before the maximum term of a standard range disposition is not a proper basis for finding a manifest injustice. *State v. Bourgeois*, 72 Wn. App. 650, 866 P.2d 43 (1994). This case squarely presents the issue, considered in dicta in *Bourgeois*, 72 Wn. App. at 661 n.7, whether it is also error for the disposition court to consider possible early release in determining the *length* of a manifest injustice disposition.

The Legislature plainly vested [the Department of Social and Health Services] with the discretionary authority to determine a juvenile offender's release date in accordance with procedures promulgated by the Department. As in the adult sentencing context, when a juvenile court considers the possibility of an administrative early release decision, it usurps the Department's statutory authority.

Second, none of the purposes of the JJA suggest that the sentencing judge ought to engage in speculative predictions about the likely behavior of a juvenile offender while in confinement.

*Bourgeois*, 72 Wn. App. at 660-61. These considerations also apply to the length of a manifest injustice disposition.[6] Thus, the court erred in increasing the disposition recommendation to 5 years based on the possibility that DJR would release S.H. before the maximum term.

## VI

S.H. contends that RCW 18.155.030(2)(b) requires certified treatment providers for all juvenile sex offenders, and that DJR's current practice of limiting the certification requirement to treatment providers who work with SSODA juveniles violates equal protection and due process.

> Only a certified sex offender treatment provider may perform or provide the following services:
>
> . . . .
>
> (b) Treatment of convicted sex offenders who are sentenced and ordered into treatment pursuant to RCW 9.94A.120(7)(a) and *adjudicated juvenile sex offenders who are ordered into treatment pursuant to RCW 13.40.160.*

(Italics ours.) RCW 18.155.030(2). RCW 13.40.160 subsections (1) through (4) and (6) through (8) do not refer specifically to sex offenses or sex offenders. Subsection (5) sets out the SSODA alternative for sex offenders. Under SSODA, the juvenile court may order an examination to determine if a juvenile who has committed a sex offense is amenable to treatment in the community.

> Except as provided in this subsection (5), after July 1, 1991, *examinations and treatment ordered pursuant to this subsection shall only be conducted by sex offender treatment providers certified by the department of health pursuant to chapter 18.155 RCW.*

(Italics ours.) RCW 13.40.160(5). The issue here is whether RCW 18.155.030(2) refers only to juveniles given SSODA dispositions under subsection (5) or to all juveniles ordered to confinement in DJR for sex offenses under any section of RCW 13.40.160.

---

[6]Furthermore, it is not clear from the record that the treatment recommendations before the court do not already contemplate that DJR may release S.H. early as a treatment incentive.

If language of a statute is clear, its plain meaning must be given effect without resort to rules of statutory construction. *State v. Theilken*, 102 Wn.2d 271, 275, 684 P.2d 709 (1984) (citing *Murphy v. Department of Licensing*, 28 Wn. App. 620, 625 P.2d 732 (1981)). A statute is ambiguous when it is susceptible to more than one interpretation. *State v. Johnson*, 119 Wn.2d 167, 172, 829 P.2d 1082 (1992). RCW 18.155.030(2)(b) is ambiguous because it may refer to all juvenile dispositions for sex offenses under RCW 13.40.160, or only to SSODA dispositions under subsection (5). "Statutes are to be construed as a whole, giving effect to all the language used, considering all provisions in relation to each other and harmonizing them all whenever possible." *State v. Blair*, 56 Wn. App. 209, 213, 783 P.2d 102 (1989) (citing *Newschwander v. Board of Trustees*, 94 Wn.2d 701, 707, 620 P.2d 88 (1980)). The relevant sections of RCW 18.155 may be read to be in harmony such that the certification requirements only apply to juveniles treated in the community under SSODA.

> The legislature finds that sex offender therapists who examine and treat sex offenders pursuant to the special sexual offender sentencing alternative [SSOSA] under RCW 9.94A.120(7)(a) and who may treat juvenile sex offenders pursuant to RCW 13.40.160, *play a vital role in protecting the public from sex offenders who remain in the community following conviction.* The legislature finds that the qualifications, practices, techniques, and effectiveness of sex offender treatment providers vary widely and that *the court's ability to effectively determine the appropriateness of granting the sentencing alternative and monitoring the offender to ensure continued protection of the community is undermined by a lack of regulated practices* . . . Public safety is best served by regulating sex offender therapists whose clients are being evaluated and being treated pursuant to RCW 9.94A.120(7)(a) and 13.40.160. This chapter shall be construed to require only those sex offender therapists who examine and treat sex offenders pursuant to RCW 9.94A.120(7)(a) and 13.40.160 to obtain a sexual offender treatment certification as provided in this chapter.

(Italics ours.) RCW 18.155.010. The treatment staff at Maple Lane have no role in "protecting the public from sex offenders who remain in the community". Their clients are not in the

community. The reference to "granting the sentencing alternative" in RCW 18.155.010 is clearly to SSODA and its adult counterpart SSOSA (special sexual offender sentencing alternative). RCW 18.155.030(2) does not require certified treatment providers at DJR custodial juvenile facilities.

S.H. alternatively argues that equal protection requires that juveniles in DJR facilities receive treatment from certified treatment providers as do juveniles serving SSODA dispositions. "Equal protection of the laws under state and federal constitutions requires that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." *State v. Olivas*, 122 Wn.2d 73, 95, 856 P.2d 1076 (1993) (quoting *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978)).

Where a juvenile can establish membership in a class of persons similarly situated yet receiving different treatment, the rational basis test of equal protection applies to determine if constitutional rights are thereby violated. *State v. Handley*, 115 Wn.2d 275, 290, 796 P.2d 1266 (1990); *In re Tapley*, 72 Wn. App. 440, 451, 865 P.2d 12 (1994).[7] Assuming arguendo that the lack of certified counselors at Maple Lane amounts to disparate treatment, the issue is whether the Legislature has a rational basis for the disparity.

A heavy burden is imposed on the party challenging legislation as violative of equal protection under the "rational basis" test. The legislature is accorded a wide scope of discretion and its statutory enactments are presumptively valid.

(Citation omitted.) *Standing v. Department of Labor & Indus.*, 92 Wn.2d 463, 467, 598 P.2d 725 (1979). The State argues that rational bases exist for the requirement that only SSODA treatment providers must be certified. SSODA juveniles may be more amenable to treatment than are juveniles who do not qualify for SSODA. SSODA juveniles are in the community, and thus lack the institutional support afforded to juveniles in DJR facilities. These reasons closely track the Legislature's stated reason for the certifica-

---

[7]The State does not argue that S.H. is not properly a member of a class of juvenile offenders.

tion requirement — treatment providers "play a vital role in protecting the public from sex offenders who remain in the community following conviction." RCW 18.155.010. A determination that SSODA treatment providers require higher qualifications than providers who work in secure facilities is rational. Therefore, the requirement that only SSODA treatment providers be certified does not violate equal protection.

Finally, we reject S.H.'s contention that due process requires certified treatment providers at DJR. S.H.'s argument is based on equating "certified" with "qualified", and on the erroneous suggestion that the certification requirements of RCW 18.155 represent the minimum acceptable qualifications for treatment providers. RCW 18.155.010 does not represent a legislative determination that uncertified treatment providers are not qualified to provide sex offender treatment in DJR facilities.

However, due process requires that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738, 32 L. Ed. 2d 435, 92 S. Ct. 1845, 1858 (1972). In the context of civilly committed adult sex offenders, the Washington Supreme Court has found:

> [G]iving the presumption of correctness to "decisions made by the appropriate professional" (here, DSHS), individuals who have been involuntarily committed have the right to "conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests".

*In re Young*, 122 Wn.2d 1, 34, 857 P.2d 989 (1993) (citing *Youngberg v. Romeo*, 457 U.S. 307, 324, 73 L. Ed. 2d 28, 102 S. Ct. 2452 (1982)). Juvenile offenders have a right to adequate treatment under the due process clause of the Fourteenth Amendment. *Nelson v. Heyne*, 491 F.2d 352 (7th Cir.), *cert. denied*, 417 U.S. 976 (1974). "In our view the 'right to treatment' includes the right to minimum acceptable standards of care and treatment for juveniles and the right to *individualized* care and treatment." *Nelson*, 491 F.2d at 360.

The State concedes that the JJA, RCW 13.40.010(2)(f), creates a statutory duty to provide treatment. Under the JJA, appropriate treatment must be determined by the specific needs of the offender. *J.N.*, 64 Wn. App. at 117. Where the length of the disposition is based on a need for treatment the record must indicate that such treatment is available and will continue for the duration of the disposition. *See P*, 37 Wn. App. at 779.

 From these authorities, we conclude that due process and the JJA require that juveniles serving a manifest injustice disposition, the length of which is based on a need for treatment, must receive adequate, individualized treatment provided by qualified persons, and the treatment must continue and be beneficial to the juvenile for the length of the disposition. The fact that treatment providers at Maple Lane are not certified under RCW 18.155 does not establish a violation of these requirements.

## VII

S.H.'s PRP raises the factual issue of whether he is receiving adequate sex offender treatment at Maple Lane. In the PRP context, S.H. must show by a preponderance of the evidence that a statutory or constitutional violation has caused him actual prejudice. *Tapley*, 72 Wn. App. at 443 (citing *In re Powell*, 117 Wn.2d 175, 184, 814 P.2d 635 (1991)). S.H. has made a prima facie showing that his treatment at Maple Lane is inadequate. The issue is whether, considering the State's response that S.H. *is* receiving adequate treatment, S.H. has shown the necessary violation and prejudice by a preponderance of the evidence. We hold that he has not.

 It will always be possible for juveniles committed to DJR to show that different, additional or better treatment is needed or desirable. If such a prima facie showing were sufficient to require a reference hearing under RAP 16.11(b), the courts would be holding innumerable reference hearings and micromanaging the DJR. In the PRP context, if DJR's response shows that a juvenile is receiving, will continue to

receive, and is benefiting from treatment which the Department determines is reasonably responsive to the individual juvenile's needs, we will deny the petition. Only if DJR concedes or the record indicates that clearly inadequate treatment is being provided will we remand the petition to the trial court for further proceedings.[8] The petitioner must show that he or she was remanded to the custody of DJR for treatment, and that no meaningful treatment is being provided. S.H.'s showing does not meet this standard.

S.H.'s arguments for better, more individualized treatment and for more highly qualified treatment providers are compelling. These are, however, matters of broad public policy, not minimal constitutional requirements. As such, they must be addressed to the Legislature and not to the courts.

S.H.'s objection that he is not receiving the exact treatment recommended by McCutcheon has a fundamental flaw. It erroneously assumes that when the trial court relied on the treatment recommendation, that disposition incorporated specific treatment recommendations which then became binding on DJR. We will not second guess DJR's professional treatment decisions absent the showing discussed above.

## VIII

 Finally, S.H. contends that his counsel at the disposition was ineffective for conceding that a manifest injustice disposition was appropriate. Claims of ineffective assistance of counsel are analyzed under a 2-prong test.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . .

---

[8]A complete lack of treatment would require remand unless it was clear that the juvenile could not be treated successfully and the disposition was supported solely by the need to protect the community.

resulted from a breakdown in the adversary process that renders the result unreliable.

*State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). "If defense counsel's conduct can be characterized as legitimate trial strategy, it cannot serve as a basis for a claim of ineffective assistance of counsel." *State v. Ray*, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991). Trial counsel's decision to concede the manifest injustice disposition was tactical. Given S.H.'s history, and the recommendations before the court, an argument for a standard range sentence would have lacked credibility. Counsel's concession of the obvious allowed him to argue for a treatment-based disposition (as opposed to simple incarceration) and a lower recommendation of $2^1/2$ years. Counsel's performance was not deficient under the first *Strickland* prong.[9] We do not reach the second, prejudice, prong.

We affirm the manifest injustice disposition and the court's reliance on McCutcheon's recommendation of up to 4 years. We reverse the disposition of 260 weeks based on the court's improper consideration of early release, and remand for entry of a disposition of 208 weeks. The personal restraint petition is denied.

Reversed.

SCHOLFIELD and GROSSE, JJ., concur.

Review denied at 125 Wn.2d 1016 (1995).

---

[9]We note that many issues raised in this appeal were preserved for appeal by the arguments made at the trial level by counsel S.H. now contends was constitutionally ineffective.