[No. 37727-2-I.  Divison One.  September 16, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. NICHOLAS
SLEDGE, *Appellant*.

*Eric Broman* and *Nielsen & Acosta*, for appellant.

*David R. Needy, Prosecuting Attorney*, and *Hilary A.
Thomas, Deputy*, for respondent.

BECKER, J. — A juvenile court imposed an exceptional disposition of 103 weeks of confinement on Nicholas Sledge. The rationale for the sentence was to ensure that, even with time off for good behavior, Sledge would remain in custody until his 18th birthday. Finding no reason why courts should not have the authority to consider a juvenile's potential early release in determining the *length* of a manifest injustice disposition, we affirm.

## Facts

Nicholas Sledge pleaded guilty to a charge of Taking a Motor Vehicle Without Permission.[1] The standard range juvenile disposition for his offense included 21-28 weeks of confinement. The plea agreement required the State to recommend a standard range disposition.

Prior to Sledge's disposition hearing, his probation officer submitted a manifest injustice report. The report summarized Sledge's extensive criminal history, dating back to the age of nine. The history included 18 juvenile dispositions; the most common among them were second and third degree theft, fourth degree assault, and third degree malicious mischief. As a result of his offenses, Sledge had been committed to the Department of Juvenile Rehabilitation (DJR) twice, placed in county detention facilities numerous times, and had spent over two years under community supervision. His behavior at the state facility was described as "problematic in all areas," and included physical altercations, threats to others, property destruction, and two escape attempts. His behavior in

---

[1]RCW 9A.56.070(1).

county detention was also poor. While awaiting disposition on the current offense, Sledge had compiled 12 incident reports in one month, mainly for fighting and property destruction. Sledge's parole officer described him as "an extremely difficult kid to supervise on parole." Sledge had no parental supervision, he did not attend school, and he had never been employed. The manifest injustice report said Sledge admitted using alcohol, marijuana, cocaine, crack, LSD, and speed. The report recommended a disposition of 103 weeks of commitment.

At the outset of the disposition hearing, the prosecutor recommended a standard range disposition. The prosecutor acknowledged that Sledge had "a significant amount of criminal history over the course of his lifetime," but nearly all of his crimes were misdemeanors. The State had decided to give Sledge "one last shot" in juvenile court, but would seek a decline to adult court if there was another offense:

> [I]t's the State's position that . . . once Mr. Sledge is released from JRA, if he commits another offense in this county, the State will be moving to decline him into adult court.
>
> . . . .
>
> . . . I felt it would be best to go forward in juvenile court at this time, give him one last shot, and then if he comes back out and hasn't learned anything at that time, then he ought to be treated as an adult. I don't think that the State should waste any more special funding on Mr. Sledge. That's the State's position, that's the reason why we're recommending the standard range, in addition to the fact that Mr. Sledge has agreed to plead guilty.

Sledge's probation officer then presented the manifest injustice recommendation. She testified that she believed Sledge's prior commitments were too short; Sledge needed to be "in a structured environment" for a longer period of time in order to change his behavior. Her reason for recommending a sentence of 103 weeks was because that

sentence would "allow Nick to be placed at JRA [Juvenile Rehabilitation Administration][2] until he's 18."

By statute, when the court imposes a maximum term greater than one year, the actual time served is within a range up to that term, but the minimum term may be no less than 80 percent of the maximum term.[3] Sledge's 18th birthday was 82 weeks in the future. Therefore, to ensure that he would remain at a JRA facility until age 18, the court needed to impose a maximum of 103 weeks.

The Court followed the recommendation in the manifest injustice report and ordered a disposition that included 103 weeks' commitment to JRA. The court concluded that Sledge was a "serious threat to the community":

> Despite community supervision, prior detention and prior commitments to DJR, the respondent continues to reoffend. Respondent's prior period of commitments to DJR, one of four months and the other eight months, have been insufficient to make an impact on the respondent or his offense behavior. A much lengthier period of time is necessary to protect the community as well as to provide an opportunity for the respondent to turn his life around. The opportunity to make a significant positive change in respondent's life must occur within the highly structured environment of a Juvenile Rehabilitation Administration institution because of his threat to the community.

## Length Of The Manifest Injustice Disposition

■ In order to uphold a manifest injustice disposition, this court must find that the length of the disposition is not "clearly excessive."[4] While the trial court is vested with broad discretion in determining the appropriate sentence,[5] the sentence chosen must have a "tenable basis"

---

[2]The record indicates that the Juvenile Rehabilitation Administration (JRA) is the new name for the Department of Juvenile Rehabilitation (DJR).

[3]RCW 13.40.0357; 13.40.030(2)(c).

[4]RCW 13.40.230.

[5]*State v. B.E.W.*, 65 Wn. App. 370, 375, 828 P.2d 87 (1992).

in the record.[6] Sledge contends the court here abused its discretion by factoring the possibility of his early release into the sentencing determination. As the State acknowledges, the 103 week sentence was based, in part, on the prospect that JRA would release Sledge before the end of the maximum term.

Among numerous issues we reviewed in *State v. S.H.*[7], on which Sledge relies, was a sentencing computation that took early release into consideration. The trial court wanted to follow a recommendation that the offender receive treatment in a closed institution for up to four years. The court believed that in view of the 80 percent rule described above, the only way to ensure that S.H. would remain in a state institution for at least four years was to impose a manifest injustice disposition of five years. We reversed and remanded for entry of a disposition of four years.[8] We held the court erred in increasing the disposition to five years based on the possibility that the State would release S.H. before his maximum term.[9]

*S.H.* was the first case to hold that a court should not consider the possibility of early release when deciding the *length* of the disposition. Washington courts have squarely and consistently held that the availability of early release is not an acceptable reason for *imposing* an exceptional sentence. The concern originated in a footnote in *State v. Fisher*,[10] a 1987 Supreme Court decision involving an exceptional sentence for an adult offender:

> In oral remarks during the sentencing proceeding, the trial court also noted that under the SRA, an offender could get credit for good behavior equal to one-third of the sentence.

---

[6]*State v. S.S.*, 67 Wn. App. 800, 819, 840 P.2d 891 (1992); *see also B.E.W.*, 65 Wn. App. at 375; *State v. P.*, 37 Wn. App. 773, 779, 686 P.2d 488 (1984).

[7]*State v. S.H.*, 75 Wn. App. 1, 877 P.2d 205 (1994), *review denied*, 125 Wn.2d 1016 (1995).

[8]*S.H.*, 75 Wn. App. at 22.

[9]*S.H.*, 75 Wn. App. at 15.

[10]*State v. Fisher*, 108 Wn.2d 419, 739 P.2d 683 (1987).

He observed that he had no doubt that Fisher would behave himself while in confinement, and if Fisher were given only the maximum sentence within the standard range, he would be eligible for release after serving two-thirds of 20 months. The trial court stated that this was not enough time for the two offenses.

To the extent that the judge relied on this reasoning to impose exceptional sentences, such reliance was improper. The framework of the SRA indicates that earned early release time is to be considered only after the offender has begun serving his sentence. *See* RCW 9.94A.150(1). Moreover, it would be inappropriate to impose a sentence outside the presumptive range based on an entirely speculative prediction of the likely behavior of an offender while in confinement.[11]

Whether early release could be factored into the *length* of a sentence was not before the court in *Fisher*.

In *State v. Ross*,[12] this court held that so long as there are adequate grounds to impose an exceptional sentence in an adult case, the trial court need not state reasons for the length of the particular sentence imposed.[13] A footnote indicated, in dicta, that the availability of good time would be an improper justification for the length of a sentence:

This is not to say, of course, that the trial court may rely on impermissible reasons such as the availability of good time or a general dissatisfaction with the applicable standard range sentence to determine the length of a sentence.[14]

The next pertinent discussion occurred in *State v.*

---

[11]*Fisher*, 108 Wn.2d at 429 n.6.

[12]*State v. Ross*, 71 Wn. App 556, 573, 861 P.2d 473, 883 P.2d 329 (1993), *review denied*, 123 Wn.2d 1019 (1994).

[13]The Supreme Court has confirmed *Ross* in holding that a court need not state reasons for the length of an exceptional sentence in an adult case. *State v. Ritchie*, 126 Wn.2d 388, 395-96, 894 P.2d 1308 (1995). The parties here have not raised the issue of whether the same rule should apply in the juvenile setting, and we do not consider it.

[14]*Ross* 71 Wn. App. at 573 n.9.

*Bourgeois*,[15] where this court held that the possibility of early release is not an appropriate basis for *imposing* a manifest injustice disposition in a juvenile case. A footnote nonetheless indicated, in dicta, that the same rationale would apply in choosing the *length* of the term: "Although Bourgeois has not expressly challenged the sentence length as clearly excessive, . . . . [i]f sentence length is fixed based on improper consideration of potential early release, then it rests on an untenable basis."[16] As authority, the court cited the *Ross* footnote.

██ *S.H.*, the first case squarely confronting the issue, relies primarily on the dicta in the *Bourgeois* footnote for its holding that a juvenile court may not consider the State's earned early release policies in determining the *length* of a disposition outside the standard range. Upon further consideration, we are persuaded that the rule adopted in this portion of *S.H.* is not sound, either in light of the dicta upon which it rests or the statute itself.

To impose a disposition longer than the standard range, a juvenile court must find an aggravating factor that was necessarily not considered in establishing the standard range; the factor must be one that distinguishes the offense from others in the same category.[17] A court may not decide to *impose* a sentence longer than the standard range merely out of a sense that the standard range would be inadequate if shortened by early release, because to do so would usurp authority that the statute places elsewhere. It is not up to the court to decide what a standard range term should be and it is not up to the court to decide whether an inmate should be able to earn early release from a standard range term. But once a juvenile court has legitimately decided to depart from the standard range, the court has broad discretion to structure a manifest

---

[15]*State v. Bourgeois*, 72 Wn. App. 650, 660-61, 866 P.2d 43 (1994) (quoted in *S.H.*, 75 Wn. App. at 15).

[16]*Bourgeois*, 72 Wn. App. at 661 n.7.

[17]*S.H.*, 75 Wn. App. at 9.

injustice disposition.[18] *Fisher's* concern about circumventing the standard range is no longer present.

The discretionary process of determining the length of a manifest injustice disposition necessarily involves, at some point, picking a number. A court should not pick a number "out of thin air."[19] The court must have a tenable basis for the exercise of its discretion.[20] But other than the overall purposes of the statute,[21] the Juvenile Justice Act itself does not set forth specific criteria for choosing the length of the disposition.

In the present case, the trial court's goal was to ensure that Sledge would remain in custody until he became subject to adult jurisdiction at age 18. The primary basis for a disposition targeting age 18 was to provide protection to the public. Sledge could not keep himself out of trouble and no adult had been able to supervise him effectively outside of confinement. A secondary purpose was to make the counseling and educational resources of the juvenile institution available to Sledge until he turned 18. In the trial court's view this would increase the possibility that he would develop a more responsible lifestyle as an adult.

Both of these reasons for keeping Sledge in custody until he was at least 18 are legitimate in view of the purposes of the Juvenile Justice Act. In *Bourgeois*, for example, we recognized that a court could fashion a disposition that would surely confine a juvenile offender through his 21st birthday, "if the juvenile court deems that to be the appropriate sentence."[22] We have also found tenable grounds for a disposition that "appears to have been based upon

---

[18]*State v. Tauala*, 54 Wn. App. 81, 86, 771 P.2d 1188, *review denied*, 113 Wn.2d 1007 (1989)

[19]*B.E.W.*, 65 Wn. App. at 375 (quoting *State v. Wood*, 42 Wn. App. 78, 84, 709 P.2d 1209 (1985), *review denied*, 105 Wn.2d 1010 (1986)).

[20]*S.S.*, 67 Wn. App. at 819.

[21]RCW 13.40.010 et. seq.

[22]*Bourgeois*, 72 Wn. App. at 657.

the time remaining before appellant's 18th birthday and the court's belief that effective treatment could be provided within that shorter period of time."[23]

If it was a legitimate goal of the trial court to fashion a disposition that would keep Sledge under the supervision of juvenile authorities until he was at least 18, then it was necessary for the trial court to take the possibility of early release into consideration. Otherwise, the state administrative agency responsible for setting his release date could decide to release him before he turned 18. That the action of a state agency should circumvent the goal of the trial court is no more desirable a result than allowing the trial court to usurp the authority of the agency. It seems to us that the purposes of the Juvenile Justice Act are served, not frustrated, when the maximum term that is chosen allows fulfillment of a legitimate goal for the juvenile, whether early release is eventually earned, or not.

We are also concerned that a rule strictly prohibiting courts from considering the effect of early release may be an artificial restraint. It may lead to recommendations and dispositions that build in a cushion for good time without expressly saying so. Indeed, part of our reason for reversing in *S.H.* was that the record did not establish that the treatment program was designed to last the full four years. "[I]t is not clear from the record that the treatment recommendations before the court do not already contemplate that DJR may release S.H. early as a treatment incentive."[24] It is preferable that the parties, and the court, articulate as fully as possible the rationale for any proposal as to sentence length so that the parties can intelligently argue the issues to the trial court. As a result, the basis for the trial court's ultimate exercise of discretion is more likely to be apparent in the record.

In *S.H.*, we held it was error to increase the recommended disposition to five years based on the possibility

---

[23]*State v. S.S.*, 67 Wn. App. 800, 819, 840 P.2d 891 (1992).

[24]*S.H.*, 75 Wn. App. at 16 n.6.

that DJR would release the offender before the maximum term.[25] We decline to follow the dicta we relied on in making that holding, and confine that portion of *S.H.* to its particular facts.

We conclude that keeping Sledge confined in a juvenile institution at least until he was 18 was not an untenable basis for setting the maximum term at 103 weeks. The court thereby assured he would serve a minimum of 82 weeks, which would take him to his 18th birthday. The selection of 103 weeks did not usurp the State's authority to grant early release for good time. Sledge retained the ability to earn release at 82 weeks through his own good conduct while in the institution.

Affirmed.

The remainder of this opinion has no precedential value and will not be published.[26]

BAKER, C.J., and ELLINGTON, J., concur.

Reconsideration denied October 30, 1996.

Review granted at 131 Wn.2d 1023 (1997).

---

[25]*S.H.*, 75 Wn App. at 15-16.

[26]*See* RCW 2.06.040; CAR 14.